[No. 28302. Department Two. August 15, 1941.]

ALFRED PETERSON et al., Respondents, v. FRED G. MAYHAM et al., Appellants.[1]

[1]Reported in 116 P. (2d) 259.

*Marion Garland, Sr.,* and *Marion Garland, Jr.,* for appellants.

*F. W. Moore,* for respondents.

MILLARD, J.—Two automobiles, one owned and operated by C. E. Nelson, who was accompanied by his sister, Helen Peterson, and the other owned and operated by Fred G. Mayham, collided about four p. m., April 24, 1940, within the intersection of North Callow avenue and Ninth street, immediately outside the city limits of Bremerton, while Nelson was making a left or "U" turn.

The marital community of Alfred and Helen Peterson instituted an action to recover against Fred G. Mayham and wife for personal injuries, alleged to have been sustained by plaintiff wife as a result of the negligence of defendant husband, who, it is alleged, operated the offending automobile

" . . . so carelessly and negligently and in disregard of the traffic ordinances of the City of Bremerton, particularly Ordinance No. 617 and of the Laws of the State of Wash. governing the operation of automobiles which is hereby referred to and made a part of this complaint, so as to cause his car to come into collision with and strike the car in which the plaintiff, Helen Peterson, was riding as a passenger or guest."

In specifying the conduct claimed to be the proximate cause of the collision, plaintiffs further alleged that both automobiles were proceeding north on North Callow avenue; that, when Nelson's automobile, which was traveling at a legal rate of speed, arrived at the intersection of North Callow avenue and Ninth street, Nelson gave the statutory signal indicating a left or "U" turn; that, while in the act of making the turn and when west of the center of North Callow avenue, Mayham, ignoring Nelson's signal, without attempting to apply his brakes, retard his speed, or sound his horn, and while proceeding at an illegal rate of speed, darted from behind a north bound motor bus and passed over to the west or left side of North Callow avenue and collided with Nelson's automobile.

For a second cause of action, plaintiffs, as assignees of C. E. Nelson, seek recovery for injuries to his person and damage to his automobile as a result of the collision described above. It is alleged that the proximate cause of the collision was defendant's negligence which consisted in the careless operation of their automobile

" . . . in disregard of the traffic ordinances of the City of Bremerton, and of the laws of the State of Washington."

Defendants entered a general denial and, by way of affirmative defense and cross-complaint, pleaded, in bar, negligence of plaintiffs and their agent, C. E. Nelson, and prayed recovery in amount of twenty dollars for property damage to defendant's automobile. Trial

to the court sitting with a jury resulted in verdict in favor of plaintiffs against defendants on both causes of action. From the judgment entered on the verdict, motions for new trial and for judgment notwithstanding the verdict having been overruled, defendants appealed.

Our disposition of the assignment that the trial court erred in overruling the motion for judgment notwithstanding the verdict, is determinative of this appeal. We have uniformly held that such a motion can not be granted unless the court can say that there is neither evidence nor reasonable inference from the evidence to justify the verdict, and that all competent evidence in the record which is favorable to the respondent we must regard as true and must give to the respondent the benefit of every favorable inference which may reasonably be drawn from such evidence. Where minds of reasonable men may differ the question should be submitted to the jury. *Moen v. Chestnut,* 9 Wn. (2d) 93, 113 P. (2d) 1030.

In order to recover against the appellants, it was incumbent upon the respondents to show by substantial evidence that appellants' driver was negligent and that that negligence was the proximate cause of the collision in question. Accepting as true respondents' version of the collision and drawing all reasonable inferences from the evidence in their favor, summarized as follows, it is clear that respondents did not sustain that burden, hence the motion for judgment notwithstanding the verdict should have been granted:

About 4:00 o'clock the afternoon of April 24, 1940, a sedan, owned and operated by C. E. Nelson, was proceeding north on North Callow avenue in the city of Bremerton. His sister, Helen Peterson, was riding in the rear seat of the automobile. The course of Callow avenue is north and south. Sixth street, which

intersects Callow avenue and is south of Ninth street, runs east and west. North on Callow avenue from Sixth street to Ninth street (which also intersects Callow avenue), a distance of more than six hundred feet, no street intersects Callow avenue, which is an arterial highway. From Sixth street to the north margin of Ninth street, Callow avenue, which is sixty feet wide, is paved with concrete a width of forty feet. From Ninth street, North Callow avenue is thirty feet wide and is paved with black top. Ninth street, which is not paved and is a nonarterial street, is sixty feet wide. Nelson entered Callow avenue at Sixth street at the time and date stated above, and turned north on Callow avenue en route to the office of a veterinarian on the west side of Callow avenue north of the intersection of Sixth street and Callow avenue, but south and short of the intersection of Ninth street and Callow avenue.

Nelson proceeded north on the east side of Callow avenue two to four feet west of the east or right curb until he was thirty-five or forty feet south of the intersection of Ninth street and Callow avenue, when, so he testified, preparatory to making a left-hand or "U" turn within the intersection he reduced the speed of his automobile to about eight miles an hour. Nelson held out his left hand at this point to warn traffic of his intention to make the left or "U" turn in the intersection. A motor bus, which was thirty-five or forty feet behind Nelson's automobile reduced its speed, proceeded to the right or east curb of Callow avenue and stopped. Appellants' automobile, which was then immediately behind the bus and was not in a position where appellant driver could see Nelson's signal warning of his intention to make a left turn, pulled from behind the bus, passed same, and, when directly in front of Nelson's automobile, which had almost com-

pleted the left turn, saw Nelson making a left turn directly in front of appellants' automobile. The two automobiles were then so close that appellant driver could not avert the collision.

Nelson testified that he did not see appellants' automobile until Nelson "was crossing the center line of street . . . when it came out from behind the bus." Appellants' automobile, which was traveling approximately thirty miles an hour, struck the left rear wheel of Nelson's automobile, when both automobiles were west of the center of Callow avenue within the north half of the intersecting Ninth street, when Nelson's automobile had almost completed the "U" turn and was headed south. The accident occurred outside the city limits of Bremerton. At the intersection of Ninth street and Callow avenue, the city limit line runs east in the center of Ninth street to the center of the intersection of Callow avenue where it turns north in the center of Callow avenue. In other words, the south half of Ninth street and east half of Callow avenue are within the city limits. The remainder of the intersection is outside the city limits.

The driver of the bus saw Nelson's signal of intention to make the left turn, and stopped his bus alongside the east curb on Callow avenue not more than thirty-five feet from the intersection. Nelson never saw appellants' automobile nor did appellant driver see Nelson's automobile until the two vehicles were within a few feet of each other. Nelson testified that he was traveling at a rate not in excess of twenty-five miles an hour until he gave the warning signal of his purpose to make the left turn within the intersection and that, at the time of making the left turn, he was traveling five to ten miles an hour.

Appellant driver testified that, when about four hundred feet from the intersection, he veered from the

right or east side of Callow avenue toward the center of the street for the purpose of passing the bus which was between him and Nelson's automobile, but that he did not pass the bus until the front of the bus was approximately forty feet south of the intersection of Callow avenue with Ninth street " . . . when the bus commenced to slow down I commenced to go on by." As Nelson's automobile was on the right or east side of Callow avenue two to four feet west of the east curb and thirty-five or forty feet in front of the bus, it was impossible for appellant driver to see Nelson's automobile until appellants' automobile was within the intersection and Nelson's automobile suddenly turned in front of him and was completing the "U" turn. Nelson's automobile, when the two drivers saw each other, was twenty feet from appellants' automobile coming straight across the road from the east side of Callow avenue on Ninth street, which compelled appellant driver to attempt to pass to the left of Nelson's automobile. It fairly appears that appellant driver was proceeding at a speed of from twenty to thirty-five miles an hour, or twenty-nine to fifty-two feet a second; and that Nelson, after arrival within the intersection, was traveling fourteen feet a second. Appellant driver never sounded his horn when he passed the bus or when he entered the intersection.

At the time of the collision, the visibility was clear and the pavement was dry. The collision occurred outside the city limits of Bremerton on an arterial highway, at which point appellant driver was not exceeding the speed limit. The city ordinances respecting the speed of vehicles within the city limits are unimportant in view of the fact that the accident happened outside the city limits, and appellant driver's speed is governed by the statute.

The court's instruction, to which appellants excepted,

as to the provisions of the city ordinances on the subject of speed of motor vehicles, was clearly erroneous. Under the evidence, the city ordinances were not applicable.

Respondents' pleading, above quoted, of appellants' disregard of the traffic ordinances of the city of Bremerton, was not sufficient. In pleading an ordinance of a city or town in this state, it is sufficient to state the title of the ordinance and the date of its passage, whereupon the court shall take judicial knowledge of the existence of such ordinance, and the tenor and effect of the ordinance. Rem. Rev. Stat., § 291 [P. C. § 8376]. If respondents had properly pleaded the ordinance, as provided by the statute, the trial court would be required to take judicial notice of the ordinance and its tenor and effect. Being required by the statute to take judicial notice of the ordinance it would be the duty of the court to pursue inquiries sufficient to make that knowledge real as far as possible. If the ordinance was within the judicial knowledge of the trial court we would take judicial notice of the ordinance. *Moore v. Dresden Inv. Co.*, 162 Wash. 289, 298 Pac. 465, 77 A. L. R. 1258.

Respondents did not properly allege, nor did they make any attempt to prove, that the city of Bremerton, by ordinance, had limited the speed of vehicles within the city limits to twenty-five miles an hour or prohibited a vehicle from passing another vehicle headed in the same direction while the vehicle ahead was crossing, or waiting to cross, or turning, or about to turn into, an intersecting street. In the absence of a sufficient pleading which would require the court to take judicial notice of the ordinance, and the absence of any evidence of the existence of such ordinance, the giving of the instruction of which appellants complain constituted prejudicial error.

 Nelson did not give the signal, required by the statute, of his intention to make a left turn. The pertinent provisions of the statute read as follows:

" . . . Any person driving any vehicle upon any public highway of this state and desiring to make a left-hand turn at any intersection shall seasonably and prudently drive such vehicle to the extreme left-hand side of that portion of the roadway lying to the right of the center of such public highway a reasonable distance before making such left-hand turn. It shall be unlawful for any person to make or attempt to make any right-hand or left-hand turn until he shall have attained the proper relative driving position as aforesaid." Rem. Rev. Stat., Vol. 7A, § 6360-84 [P. C. § 2696-842].

"It shall be the duty of every person operating a vehicle upon any public highway and intending to turn from a standstill or while in motion intending to turn or stop, to give a timely signal from the left-hand side of such vehicle indicating the direction in which he intends to turn or that he intends to stop, as follows: If he intends to turn to the left he shall extend his arm in a horizontal position from the left side of such vehicle continuously for a reasonable length of time; if he intends to turn to the right he shall extend his arm from the left side of the vehicle with his forearm raised vertically continuously for a reasonable length of time; if he intends to stop he shall extend his arm from the left side of such vehicle with his forearm lowered vertically continuously for a reasonable length of time. For the purpose of this section, a reasonable length of time shall be that time required to traverse a distance in feet equal to five times the maximum speed in miles per hour allowed by law during the approach to the point of turning or stopping." Rem. Rev. Stat., Vol. 7A, § 6360-85 [P. C. § 2696-843].

Appellant driver had the right to proceed north along the arterial highway as he was then traveling until such time as he was reasonably apprised of intention of another user of that highway ahead of him to turn

to the left within the intersection, and he had the right to pass the city bus which had stopped south of the intersection at that time. The signal given under the circumstances was not such as to timely apprise appellant driver of Nelson's intention to make a left turn in front of the approaching automobile.

If Nelson intended to turn to the left or make a "U" turn within the intersection, he should, as the statute requires, have extended his arm from the left side of his automobile continuously for a reasonable length of time, which in this case is not less than one hundred and twenty-five feet (being the time required to traverse a distance in feet equal to five times the maximum speed of twenty-five miles an hour allowed by law) during the approach to the point of turning. Appellant driver was proceeding at the rate of thirty to thirty-five miles an hour or about fifty feet a second. If in making the turn within the intersection Nelson was traveling, as he testified, eight to ten miles an hour, he was proceeding at the rate of approximately fourteen feet a second. Appellant driver was not proceeding recklessly or at an unlawful rate of speed. Whether he sounded his horn is unimportant, as there is nothing in the evidence to indicate that had the horn been sounded it would have been of any assistance in averting the collision.

Appellant driver was not negligent in failing to see, under the circumstances, Nelson's automobile before it entered the intersection. The evidence is clear that Nelson turned, without warning, in front of appellants' automobile, which was where it had a right to be. In keeping on the right or east side of the highway and turning as he did, instead of driving to the extreme left-hand side of that portion of the highway, lying to the right of the center of the highway, a reasonable distance before making the left-hand turn,

Nelson violated the statute above quoted, and that negligence was the proximate cause of the collision.

Where a statute (Rem. Rev. Stat., Vol. 7A, §§ 6360-84, 6360-85) requires that a motorist turning to the left at any intersection shall seasonably and prudently drive such vehicle to the extreme left-hand side of that portion of the roadway lying to the right of the center of such public highway a reasonable distance before making such a left-hand turn, a motorist, proceeding in the same direction as the one who desires to make a left-hand or "U" turn, is entitled to assume that the driver engaged in making the left-hand or "U" turn will govern his conduct by the provision in question.

The evidence warrants no conclusion other than that Nelson made a left turn within the intersection without giving any signal or warning a sufficient length of time in advance of the act of slackening his speed and making the left or "U" turn to be of service to the operators of other vehicles behind the bus following in the same direction. Under the facts, appellant driver could not reasonably be regarded as having created, or having materially contributed to, the emergency which he encountered, and his conduct during the few seconds intervening between his first knowledge of that emergency and the collision did not constitute negligence.

The judgment is reversed and the cause remanded, with direction to the trial court to dismiss the action.

ROBINSON, C. J., BEALS, SIMPSON, and JEFFERS, JJ., concur.