[No. 30529. Department One. January 27, 1949.]

LESLIE C. GRAHAM *et al., Respondents,* v. JOHN RODERICK, *Appellant.*[1]

[1]Reported in 202 P. (2d) 253.

*Theodore B. Bruener,* for appellant.
*Donn F. Lawwill,* for respondents.

STEINERT, J.—Plaintiffs instituted suit to recover damages for personal injuries suffered and property impairment incurred as the result of an automobile collision between a car driven by one of the plaintiffs and a car driven by the defendant.

The complaint alleged that the proximate cause of the accident was the negligence of the defendant in the following particulars: (1) in traveling at an excessive rate of speed; (2) in failing to keep a proper lookout for traffic traveling ahead of him; (3) in following too closely behind the plaintiffs' machine; (4) in failing to keep his automobile under reasonable and proper control; (5) in failing to turn or come to a stop so as to avoid the accident, although, by exercising reasonable care, he could have done either of those things; (6) in driving without lights after the hours of darkness; and (7) in failing to exercise reasonable care, considering the nature of the highway, the condition of traffic, and the use of the highway by others.

In his answer and cross-complaint, the defendant denied each of the allegations of negligence contained in plaintiffs' complaint; affirmatively pleaded contributory negligence on the part of the plaintiffs as the proximate cause of the accident; and cross-complained, alleging that the sole proximate cause of the accident was the negligence of the plaintiff driver in failing to take proper precautions in negotiating a "U" turn, and in failing to stop or attempt to stop before crossing an arterial highway; wherefore defendant prayed that the court deny any relief to the plaintiffs and award to the defendant damages for loss in the market value of his car as a result of the collision. By way of reply, the plaintiffs denied the affirmative allegations of the answer and cross-complaint.

The cause was tried to the court, and thereafter findings of fact and conclusions of law were entered, followed by judgment dismissing the defendant's cross-complaint and granting to the plaintiffs a recovery in the total sum of $1,395.70, for personal injuries sustained by both of them, for medical expenses and hospitalization, and for damages to their car. Defendant appealed.

The facts of the case are as follows:

Lincoln street is an arterial highway, extending in a northerly-southerly direction through the city of Hoquiam. Chenault street intersects Lincoln street in an easterly-westerly direction. Lincoln street is forty and one-half feet wide, and Chenault street is twenty-four feet wide. At a point approximately two blocks north of Chenault street, on Lincoln street, there is a slight rise, or high spot, and at this point Lincoln street curves to the left.

The visibility at the time of the accident was good, and the streets were dry. The intersection of Lincoln and Chenault streets was illuminated by a street light, and there was no other traffic, nor were there any parked cars, in the vicinity at the time of the accident.

At 11:45 p. m., on the evening of March 2, 1946, the appellant, John Roderick, was driving his 1938 Chevrolet coupe in a southerly direction on Lincoln street, on his way home, after having attended a motion picture show. Respondent Leslie C. Graham, accompanied by his wife, respondent Betty Graham, was driving their 1936 Ford coupe south along Lincoln street at this same time, and was traveling a short distance ahead of appellant's motor vehicle.

Approximately one block before respondents' car reached the intersection of Lincoln and Chenault streets, it struck an indentation in the roadway, which was later found to be a hole in its surfacing. Being curious or apprehensive as to what their car had come in contact with, respondents decided to make a "U" turn at the intersection of Lincoln and Chenault streets in order to go back and find out what the obstruction was. With this in view, and while proceeding along the right-hand lane, near the curb on the west side of Lincoln street, Mr. Graham, the respondent driver, put his arm out to signal a "slow-down." Upon reaching Chenault street, he turned to the right, steering the car seven or eight feet into Chenault street, then slowed down to a speed of five or six miles per hour, shifted gears, and turned to the left, back into Lincoln street, intending to complete his "U" turn, when, at that moment, his automo-

bile was struck a broadside glancing blow on its left-front side by appellant's machine. The front of respondents' car had not at that time quite reached the center of Lincoln street when it was struck, and, from the evidence, it appears that the car was wholly within the southwest quarter of the intersection.

Both of the respondents testified that, before starting to make the "U" turn, and also before entering the cross-lane of traffic of Lincoln street, they looked back in order to ascertain whether any car was following them and that they did not observe the lights of any vehicle traveling south on Lincoln street. Their testimony was that they did not see appellant's vehicle prior to the time that it struck them, although they both looked.

Appellant's testimony was that he was traveling south on Lincoln street, about one-half a block or a block behind respondents' car, and was slowly gaining on it. He observed respondents' automobile pull in close to the right-hand curb, slow down, and turn into Chenault street. Assuming that the car was making a right-hand turn into Chenault street, appellant continued his same speed and driving position in the left, or inside, lane. He saw no hand signal from respondents' car, nor did he observe the car further until it suddenly turned to the left directly into his lane of travel, immediately in front of him. He testified that he was then unable to stop, but could only slow down and turn slightly to the left, in consequence of which he struck respondents' car a glancing blow on its left-front side, rather than a direct blow.

Appellant admitted that he was exceeding the twenty-five mile per hour speed limit for Lincoln street, and estimated that he was traveling at a speed of thirty to thirty-five miles per hour prior to the instant that he observed respondents' car directly in his lane of travel. He testified that his lights were burning.

The principal assignment of error urged by the appellant is the failure or refusal of the trial court to find that the respondents were guilty of contributory negligence. His contention, in this regard, is that the respondent driver

was guilty of negligence *per se,* either because he did not comply with the provisions of Rem. Rev. Stat., Vol. 7A, § 6360-84 [P.P.C. § 295-19], which required that he

" . . . seasonably and prudently drive such vehicle to the extreme *left-hand side of that portion of the roadway lying to the right of the center of such public highway* a reasonable distance before making such left-hand turn. . . ." (Italics ours),

or, in the alternative, because he did not obey the mandate of Rem. Rev. Stat., Vol. 7A, § 6360-90 [P.P.C. § 295-31], which provides:

"The operator of any vehicle shall stop as required by law at the entrance to any intersection with any arterial public highway, and having stopped shall look out for and give right of way to any vehicles upon such arterial highway simultaneously approaching a given point within the intersection, whether or not such vehicle first reach and enter the intersection."

In answer to appellant's first contention, and despite this court's ruling in *Peterson v. Mayham,* 10 Wn. (2d) 111, 116 P. (2d) 259, that the turning statute (Rem. Rev. Stat., Vol. 7A, § 6360-84) is to be complied with in the making of a "U" turn at an intersection, respondent argues that this statute should not be held to be applicable to the making of such a turn where the street or highway is so narrow as to make such a maneuver impossible of successful completion, if such left turn starts from the left, or inside, lane as prescribed by the statute.

Respondents' second contention is that the arterial highway statute (Rem. Rev. Stat., Vol. 7A, § 6360-90) is not applicable, because, even though in his attempted completion of a "U" turn respondent driver may have driven his automobile directly across the lane of approaching traffic without first bringing his own car to a stop at the intersection, yet his vehicle never entirely left Lincoln street, and therefore was not *entering* that street, and hence he did not come within the provisions of the statute requiring any vehicle entering an arterial highway to come to a complete stop and give the right of way to vehicles simultaneously approaching a given point within the intersection.

In passing upon this assignment of error, we shall assume, merely for the purposes of this appeal, that neither of the above two statutes referred to and quoted from is applicable to the circumstances of this case.

Where no statute is applicable, resort must be had to the common-law principles of negligence.

In testing the respondent driver's conduct, in light of these principles, we have in mind the well-established rule that findings of the trial court will not be disturbed unless we are convinced that they are against the weight of the evidence; we also are cognizant of the fact that, implicit in the trial court's judgment for respondents, is the finding that they were not guilty of contributory negligence.

The care required of the operator of an automobile, aside from special duties imposed by statute or ordinance, is ordinary or reasonable care under the existing circumstances, and mere compliance with all statutory requirements does not of itself absolve a motorist from negligence.

The extent of caution necessary to be taken in the exercise of ordinary care varies according to the circumstances of each case and the character of the danger to be avoided. *Domke v. Gunning*, 62 Wash. 629, 114 Pac. 436; *De Lys v. Powell-Sanders Co.*, 90 Wash. 31, 155 Pac. 407; *Haaga v. Saginaw Logging Co.*, 169 Wash. 547, 14 P. (2d) 55.

While the relative rights and duties of drivers of vehicles upon streets and highways are, in general, equal and reciprocal, except where otherwise fixed by positive law, such drivers are under obligation to act with due regard to the rights of others, and is charged with the knowledge that others may be using the street. In considering whether a particular motorist used reasonable care, his conduct as a whole must be considered. 1 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.), 467-484, §§ 631-634; 2 Berry on Automobiles (7th ed.), 301-310, §§ 2.316, 2.317.

We are of the opinion that, when tested by these rules of law, the evidence preponderates against a finding that the conduct of the respondent driver measured up to the

applicable standard of reasonable care under the circumstances.

A "U" turn movement, executed at an intersection within a city, is at best a more or less hazardous operation, often requiring considerable skill and vigilance to be safely executed, because of the fact that the operator engaged in such maneuver must observe and contend with traffic approaching from four directions.

While both of the respondents in this instance testified that they looked to their left before proceeding into the cross-traffic of the arterial highway, they did not see appellant's automobile approaching, although it was there to be seen, nor did they stop before proceeding across the arterial.

Respondents' principal contention and reason why they did not stop for, and give the right of way to, appellant's vehicle is that its lights could not have been burning, since they looked and saw none. The trial court made no finding that appellant's lights were not burning, although it did observe, in its memorandum opinion, that the lights "may have been dim either from battery weakness or on low beam or on dimmers." We can agree that such may have been the case, but, as appellant has pointed out, there is no evidence in the record to support any such theory.

Because of this fact, we are left with a situation where the only rule which can be applied is that a party will be deemed to have observed that which he necessarily would have seen if he had looked, and will not be absolved of the charge of negligently having failed to look, by testimony that he looked and did not see. *Paddock v. Tone,* 25 Wn. (2d) 940, 172 P. (2d) 481; *Stanley v. Allen,* 27 Wn. (2d) 770, 180 P. (2d) 90.

It appears to us to be axiomatic that, in making a left-hand turn or a "U" turn, from the right, or outside, lane, at the intersection, and proceeding across the arterial, the respondent driver did not have the right of way. In the exercise of reasonable care, he should have yielded to traffic proceeding in either direction along the arterial. As an ordinarily careful and prudent operator of a motor vehicle, he was bound to know that the average driver pro-

ceeding on an arterial, where he has the right of way, will take less care at intersections than would the same driver when proceeding on a nonarterial street, where he has no such preferential right. Especially is this true at or near the hour of midnight, which was the approximate time of the accident here involved.

The following language of this court, in *McAllister v. Anderson,* 169 Wash. 14, 13 P. (2d) 36, seems to us to be particularly applicable, by analogy, to respondents' situation:

"When one driving on a non-arterial street or highway approaches an arterial highway, he knows and is bound to know that travelers thereon having or assuming to have the right of way will be traveling at considerable speed and keeping less than the usual outlook for intercepting cross-traffic. This is especially true at midnight, when travelers, presuming upon absence of congestion, are prone to greater speed and less care for others than may be expected in the busy hours of day."

While, strictly speaking, the respondent driver cannot be said to have been driving on a nonarterial street, approaching an arterial highway, at the time of the collision, he nonetheless had to cross the width of the arterial in completing his "U" turn, and we cannot conceive that, as a reasonably prudent driver, he was not bound carefully to observe the condition of traffic in order to ascertain whether such maneuver could be safely executed.

Appellant further contends that the court erred in failing to enter judgment in his favor on his cross-complaint. The substance of his argument, with respect to this contention, is that the only evidence of negligence on his part is his admission that, immediately prior to the accident, he was traveling in excess of the applicable twenty-five miles per hour speed limit, but that, since the evidence established that respondents' car cut suddenly in front of his machine, completely blockading his lane of travel, the accident would have inevitably occurred even though he had been proceeding at a lawful rate of speed.

Appellant's own estimate of his speed was thirty to thirty-five miles per hour. The trial court made a finding, however, that appellant's speed was in excess of thirty-five miles per hour, considering the distances to, and the force with, which the respective automobiles were hurled, and having in mind the damage to the respective vehicles. This the court was entitled to find, for the nature of an impact and the violence of a collision, together with its results, may be taken into consideration in connection with all other circumstances in determining the rate of speed of a colliding vehicle. *Hauswirth v. Pom-Arleau,* 11 Wn. (2d) 354, 119 P. (2d) 674; *Paddock v. Tone, supra.*

Therefore, what appellant now asks is that we hold that the preponderance of the evidence supports a ruling that the accident would have happened if, rather than traveling at some speed in excess of thirty-five miles per hour, he had been proceeding at the legal rate of twenty-five miles per hour. We may agree that what appellant contends for is a possibility, but under the evidence in the record it is too remote a possibility to allow us to conclude that his excessive speed was not a contributing proximate cause of the collision.

To recapitulate, appellant's testimony relevant to that issue was that he first observed respondents' automobile when he himself was about two blocks from Chenault street, and that he was then slowly overtaking it; that he observed respondents' car pull over to the right and make a right-hand turn into Chenault street; that, after observing this maneuver, he took his eyes off respondents' car and continued at his former speed, until he again observed that car as it suddenly ran immediately in front of him; and that, when this happened, his actions and reactions in response thereto were, as expressed by him:

"I stepped on the brakes first. Naturally, I saw I couldn't stop in time and *I tried to get then around to the left and I thought I would.* I hit a glancing blow on the left front wheel." (Italics ours.)

Since appellant, while traveling at a speed in excess of thirty-five miles per hour, observed respondents' car in time to slow down and swerve to his left so as to deal only a glancing blow, although at the time he thought he could avoid the impact entirely, it is more than probable, in fact almost certain, that, if appellant had been traveling at the legally prescribed rate, the collision would have been averted.

In addition to the factor of the excessive speed of appellant's automobile, the trial court also found that appellant failed to maintain a reasonable and proper lookout for cars traveling ahead of him, under the circumstances. We cannot say that the evidence preponderates against this finding, inasmuch as appellant's own testimony is that he did not observe respondents' automobile any further, after he saw it turn toward the right at the intersection of Chenault street, until the car turned to the left directly in front of him.

As relevant to this issue, respondents offered, and the court admitted, testimony that, on the day after the accident and while appellant's car was in a garage, whither it had been towed by a wrecker, appellant's windshield was observed to be covered with a film of mud, which would obscure the vision of one driving the car. Appellant objected to the admission of this testimony, on the ground that no foundation had been laid therefor, in that it was not shown how the car got to the garage, what roads it went over, or that the windshield was in the same condition at the time of its examination by the witness as it was at the time of the accident.

We do not deem it necessary to pass on the merits of this assignment of error, for, if the windshield was reasonably clean on the night of the accident, and if the appellant had maintained a reasonably careful lookout along the road ahead of him, he would have been able to observe that respondents' machine did not make a complete right-hand turn into Chenault street, and the trial court's finding would be sustainable on that ground; if, on the other hand, the testimony was admissible as tending to show that appel-

lant's windshield was covered with a film of mud at the time of the accident, then the trial court's finding that he failed to keep a proper lookout could be sustained either on the ground that appellant obviously did not exercise that degree of care which would be reasonable care under those circumstances, or that he was negligent in driving at all with his windshield in that condition.

For the reasons hereinabove given, that part of the judgment dismissing appellant's cross-complaint is affirmed, and that part thereof which awarded respondents a recovery is reversed, with direction to the trial court to dismiss both the respondents' action and the appellant's cross-action.

BEALS, SIMPSON, MALLERY, and HILL, JJ., concur.

[1] Reported in 202 P. (2d) 277.