[No. 1030-1.    Division One—Panel 2.    May 8, 1972.]

FRANZ X. GABL et al., Appellants, v. ALASKA LOAN & INVESTMENT Co., Respondent.

*William A. Stiles, Culp, Dwyer, Guterson & Grader,* and *Robert A. Keolker,* for appellants.

*Roehl & Roehl,* for respondent.

FARRIS, A.C.J.—On June 14, 1969, a fire occurred in certain residential apartments located on the upper floor of the Alaska Building in Bellingham, Washington, which damaged personal property of Gabl, McGinnis and Robert Burns, Inc., tenants of the ground floor and the basement of the building. They initiated an action against Alaska Loan & Investment Company, their landlord, for damage suffered in the fire. This action was based upon alleged violations of the Bellingham fire code and the Bellingham building code and negligence on the part of Alaska Loan, all of which contributed to the injury complained of. The trial court granted a motion for summary judgment dismissing the claims of Gabl and McGinnis after finding that (1) the tenants had refused to properly plead the Bellingham building code, although extended an opportunity to do so; (2) the Bellingham fire code was not violated as a matter of law; and (3) the exculpatory clauses of the leases of plaintiffs' Gabl and McGinnis were legally sufficient to bar any claim of negligence on the part of Alaska Loan. Robert Burns, Inc., the third plaintiff, had an oral lease without an exculpatory clause and was permitted to proceed with an action for negligence, but its action on the grounds of violations of the building code and the fire code was dismissed. All three plaintiffs appeal the ruling of the trial court.

We agree that the building code was not properly before the court. CR 9(i) provides:

> In pleading any ordinance of a city or town in this state it shall be sufficient to state the title of such ordinance and the date of its passage, whereupon the court shall take judicial notice of the existence of such ordinance and the tenor and effect thereof.

This statutory requirement was not met. There was no allegation of violation of the Bellingham building code in the complaint. The code was first mentioned in a brief in

opposition to Alaska Loan's motion for summary judgment. An opportunity to plead the code was declined. The remedy of the plaintiffs was to move to amend the complaint, but such a motion was not made. The question of whether there had been a violation of the Bellingham building code was therefore not before the court at the time of its consideration of the motion for summary judgment. *See Peterson v. Mayham,* 10 Wn.2d 111, 116 P.2d 259 (1941).

The Bellingham fire code was properly pleaded. Section 14.5 of this code provides:

> Buildings exceeding 50 feet in height, . . . shall be equipped with standpipes to provide reasonable safety to persons and property.

The court ruled that the failure of Alaska Loan to have the existing standpipes connected to a water supply was not a violation of this code because the ordinance did not require standpipes in a building, such as the Alaska Building, whose maximum height was less than 50 feet. The trial court also noted that the written recommendation of a Bellingham fire inspector that the standpipes be connected did not of itself create an obligation upon Alaska Loan to have the standpipes connected.

■ The only affidavit on file relating to the fire code which referred to the height of the Alaska Building was one by Norman Livermore, an architect licensed to practice in Washington, who stated that he had calculated the height of the building and at no point was the height greater than 50 feet. There was no controverting affidavit. Thus, within the meaning of CR 56(c), there was no genuine issue of whether standpipes were required in the Alaska Building by the Bellingham fire code. Alaska Loan was properly granted summary judgment on that issue.

The plaintiffs also allege that the damages suffered by them were proximately caused by the negligence of Alaska Loan. The trial court ruled that the claims of Gabl and McGinnis based upon the alleged negligence of Alaska Loan were barred by the exculpatory clauses in the written leases executed by the respective parties. The Gabl lease contained the following clause:

All personal property of any kind or description whatsoever in the leased premises shall be at the Lessees' sole risk, and Lessor shall not be liable for any damage done to, or loss of, such personal property; or for damage or loss suffered by the business of the Lessees arising from any act or neglect of co-tenants or other occupants of the building or their employees or of other persons, or from bursting, overflowing or leaking of water, sewer or steam pipes, or from the heating or plumbing fixtures, or from electric wires, or from gas, or caused in any manner whatsoever.

The McGinnis lease contained the following clause:

All personal property on said leased premises shall be at the sole risk of lessees, and lessor shall not be liable for any damage, either to person or property sustained by lessees or others, caused by any defects now in said premises or hereafter occurring therein, or due to the building in which said leased premises are situated, or any part or appurtenances thereof, becoming out of repair or caused by fire, or the bursting or leaking of water, gas, sewer or steam pipes, or from any act or neglect of employees, co-tenants or other occupants of said building, or any other persons, including lessors' agents, or due to the happening of any accident from whatsoever cause in or about said building. Lessees agree to defend and hold harmless the lessor from any and all claims for damages suffered or alleged to be suffered in or about the leased premises by any person, firm or corporation.

The plaintiffs contend that an exculpatory clause in a lease of business space in a multiple unit residential-business building, which purports to protect the lessor from liability for his own negligence occurring in an area of the building over which the lessor retains control, is void as against public policy and should not be enforced. Plaintiffs do not contend that the leases were negotiated in any manner other than freely, openly and at arm's length.

The Supreme Court has refused to enforce clauses disclaiming liability in the lease of a residential apartment, *McCutcheon v. United Homes Corp.*, 79 Wn.2d 443, 486 P.2d 1093 (1971), and in the rental of a golf cart, *Baker v.*

*Seattle,* 79 Wn.2d 198, 484 P.2d 405 (1971). These decisions involved personal injuries rather than property damage. In *McCutcheon,* the court observed that whether a clause could be used in a lease of property for business purposes to exculpate a landlord from the result of his own negligence in the event of property damage was not then before the court. Nor was the court confronted with the question of whether a landlord and a tenant could specifically enter into a bargain for an exculpatory clause in a rental lease on the basis of reduced rental payment.

In *Baker,* the court noted that the legislature had announced a public policy with regard to disclaimers of liability in commercial transactions by enacting the Uniform Commercial Code, particularly RCW 62A.2-719 (3) on sales. That subsection provides:

> Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

This statute was a factor in the *Baker* decision. The statute indicates that limitation of damages where the loss is commercial is not prima facie unconscionable.

Here, the respective bargaining positions of the parties to the leases were not unequal and the distribution of the risks entailed no elements of injustice. We are not confronted with an allegation of gross negligence, willful misconduct or the maintenance of a nuisance. To shift liability from the commercial tenant to the landlord without regard to the other provisions of the lease could cause, rather than cure, inequity. The leases will be enforced as the parties contemplated. *See Mayfair Fabrics v. Henley,* 48 N.J. 483, 226 A.2d 602 (1967) and *Dilks v. Flohr Chevrolet, Inc.,* 411 Pa. 425, 192 A.2d 682 (1963).

Affirmed.

JAMES and SWANSON, JJ., concur.