IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| GIFFORD INDUSTRIES, INC.,<br>a Washington corporation, | )<br>)<br>) | No. 69838-9-I |
| Appellant, | )<br>)<br>) | DIVISION ONE |
| v. | )<br>) | |
| CHRISTIAN TRUER, and "JANE DOE"<br>TRUER and the martial community<br>comprised thereof d/b/a<br>BRANCHFLOWER PROPERTIES, | )<br>)<br>)<br>)<br>) | UNPUBLISHED OPINION |
| Respondents. | ) | FILED: March 17, 2014 |

SCHINDLER, J. — Branchflower Properties Inc. leased warehouse space to Gifford

Industries Inc. The commercial lease states that the landlord is responsible for repairs

to the roof but is not liable for damage to the tenant's property. Gifford filed a breach of

contract action against Branchflower seeking consequential damages, alleging

Branchflower breached the duty to repair the roof resulting in damage to property. We

affirm summary judgment dismissal of the breach of contract lawsuit against

Branchflower.

## FACTS

Branchflower Properties Inc. owns a warehouse located in Seattle. Gifford

Industries Inc. is a Washington corporation that installs specialty athletic floors. In

March 2002, Branchflower agreed to lease office space and a portion of the top floor of the warehouse to Gifford. On March 28, 2002, Branchflower and Gifford entered into a "Lease Agreement-Commercial Premises." Under the terms of the lease, Branchflower assumed responsibility for maintaining the roof but was not liable for damage to the tenant's property.

On August 4, 2010, Gifford filed a complaint for breach of contract against Branchflower. Gifford alleged Branchflower breached the lease "by making modifications . . . to the building in such a way as to allow water or other materials to enter the building," resulting in damage to inventory and equipment. Gifford also alleged Branchflower "took no action to assist in making repairs to the building so as to protect Plaintiffs inventory," or "to compensate or assist in reducing the scope of damage that Gifford was experiencing." Gifford sought consequential damages, prejudgment interest, and attorney fees and costs.

Branchflower filed a motion for summary judgment dismissal. Branchflower conceded that under the terms of the lease, it had a duty "to make repairs to the common areas, including the roof," but that it was not liable for damage to the tenant's property.

In opposition, Gifford argued the language of the lease was ambiguous and Branchflower was liable for the property damage caused by the failure to maintain and repair the roof. Gifford also argued that interpreting the language of the lease to exclude liability for property damage was against public policy. Gifford submitted declarations from the principal owner of Gifford, Harv Gifford, and the senior project

2

manager for Gifford, Ken Downs. Harv Gifford and Downs asserted Branchflower failed to take adequate steps to protect Gifford's property from damage.

In reply, Branchflower reiterated the language of the lease unambiguously states it is not liable for any property damage to the tenant's property. Citing Gabl v. Alaska Loan & Investment Co., 6 Wn. App. 880, 496 P.2d 548 (1972), Branchflower argued that the exculpatory provision in the lease was not against public policy.

The court granted the motion for summary judgment dismissal of the lawsuit. The court ruled Gifford's claims "fail as a matter of law as the lease specifically provides that the lessor is not liable for any damage to lessee's property." The written memorandum decision states, in pertinent part:

> In this case, it is clear that the parties contemplated a commercial lease whereby Defendant was responsible for maintenance and repair of the roof as set forth in paragraph 7 together with an exculpatory provision as set forth in paragraph 17. Similar to the leases at issue in Gabl, the exculpatory provision disclaims liability of the Defendant for damage to Plaintiff's property caused by Defendant's alleged inaction within areas controlled by Defendant, i.e., the maintenance of the roof. Despite the apparent conflict between paragraphs 7 and 17, the parties are free to agree to exculpatory clauses as they wish. Plaintiff made no allegation of negligence, gross negligence or willful misconduct. It also appears that the bargaining positions of the parties were not unequal and the distribution of risk was not unjust.

## ANALYSIS

Gifford contends that because the lease requires Branchflower to repair the roof, the exculpatory provision of the lease that states Branchflower is not liable for damage to the tenant's property is ambiguous. Gifford also argues that interpreting the lease to preclude liability for damage caused by the negligent failure to repair the roof would render the duty of the landlord to repair the roof meaningless.

This court reviews summary judgment de novo. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 501, 115 P.3d 262 (2005). Summary judgment is appropriate only if the moving party is entitled to judgment as a matter of law. CR 56(c). The construction of a contract and whether a contract is ambiguous is a legal question we review de novo. Schwab v. City of Seattle, 64 Wn. App. 742, 751, 826 P.2d 1089 (1992).

"The touchstone of contract interpretation is the parties' intent." Tanner Elec. Coop. v. Puget Sound Power & Light, 128 Wn.2d 656, 674, 911 P.2d 1301 (1996). Clear and unambiguous contracts are enforced as written. McDonald v. State Farm Fire & Cas. Co., 119 Wn.2d 724, 733-34, 837 P.2d 1000 (1992). Words used in a contract are given their ordinary, usual, and popular meaning unless the agreement clearly demonstrates a contrary intent. Hearst, 154 Wn.2d at 504.

Courts interpret the contract as a whole and will not read ambiguity into an unambiguous contract. Berg v. Hudesman, 115 Wn.2d 657, 669, 801 P.2d 222 (1990); Syrovy v. Alpine Res., Inc., 122 Wn.2d 544, 551, 859 P.2d 51 (1993). "A contract provision is ambiguous when its terms are uncertain or when its terms are capable of being understood as having more than one meaning." Mayer v. Pierce County Med. Bureau, Inc., 80 Wn. App. 416, 421, 909 P.2d 1323 (1995).

Branchflower concedes that under section 7 of the lease, it had a duty to repair the roof. But Branchflower argues that under the plain language of section 17, it is not liable for damage to Gifford's property.

Section 7 states, in pertinent part:

> **7)   REPAIRS AND MAINTENANCE:**   . . . Except for the roof, exterior walls and foundation, which are the responsibility of the Landlord,

4

Tenant shall make such repairs as necessary to maintain the premises in as good condition as they are now, reasonable use and wear and damage by fire and other casualty excepted.

Section 17 states:

**17)  ACCIDENTS AND LIABILITY:**    Landlord or its agent shall not be liable for any injury or damage to persons or property sustained by Tenant or other, in and about the Premises.  Tenant agrees to defend and hold Landlord and its agents harmless from any claim, action and/or judgment for damages to property or injury to persons suffered or alleged to be suffered on the Premises by any person, firm or corporation unless caused by Landlord's negligence.
Tenant agrees to maintain public liability insurance on the Premises in the minimum level of $1,000,000 for property damage and in the minimum of $1,000,000 for bodily injuries and death, and shall name Landlord as an additional named insured.  Tenant shall furnish Landlord a certificate indicating that the insurance policy is in full force and effect, the Landlord has been named as an additional insured, and that the policy may not be cancelled unless ten (10) days prior written notice of the proposed cancellation has been given to Landlord.

Gifford relies on the language in the second sentence of section 17, "Tenant agrees to defend and hold Landlord . . . harmless from any claim, action and/or judgment for damages to property or injury to persons suffered . . . on the Premises . . . unless caused by Landlord's negligence," to argue Branchflower is liable for property damages caused by its negligent failure to repair the roof.  Gifford claims the second sentence of section 17 means that the exculpatory provision in the first sentence applies only where the landlord is not negligent.

The language used in section 17 does not contain uncertain terms nor is it susceptible to two different meanings.[1]  The plain language of section 17 does not support Gifford's interpretation.  The first sentence of section 17 limits the landlord's

---

[1] For the first time in its reply brief, Gifford argues that the release of liability clause is unenforceable because it is inconspicuous and Branchflower was grossly negligent.  When reviewing a grant of summary judgment, this court considers solely the issues and evidence the parties called to the trial court's attention on motion for summary judgment.  RAP 9.12; Schreiner Farms, Inc. v. Am. Tower, Inc., 173 Wn. App. 154, 158, 293 P.3d 407 (2013).

liability. The first sentence unambiguously states, "Landlord . . . shall not be liable for any . . . damage to persons or property sustained by Tenant or other, in and about the Premises."

The second sentence does not apply to the tenant's breach of contract action against the landlord for property damage. The language in the second sentence of section 17 is an indemnification and hold harmless provision that applies to third party claims where the tenant is obligated to indemnify the landlord. The second sentence requires the tenant to indemnify Branchflower from third party claims "unless caused by Landlord's negligence." Consequently, section 17 requires the tenant to obtain liability insurance on the leased premises and name Branchflower as an additional named insured.

We also conclude the exculpatory provision set forth in section 17 of the commercial lease does not make the duty to repair in section 7 meaningless. Although section 17 limits the landlord's liability and the remedies available to the tenant, it does not eliminate certain common law remedies for breach of the lease, such as constructive eviction. See, e.g., McKennon v. Anderson, 49 Wn.2d 55, 62, 298 P.2d 492 (1956) (holding that in a wrongful eviction, the tenant is entitled to recover all the damages which reasonably resulted to him from the landlord's wrongful act, including the expense of moving); Risdon v. Hotel Savoy Co., 99 Wash. 616, 616-17, 170 P. 146 (1918) (holding that a constructively evicted commercial tenant may recover lost profits); Aro Glass & Upholstery Co. v. Munson-Smith Motors, Inc., 12 Wn. App. 6, 8, 11, 528 P.2d 502 (1974) (upholding an award of damages to a commercial tenant for costs

6

incurred in moving equipment and stock where the landlord was found to have constructively evicted the tenant by failing to repair a "puddling" problem).

Relying on the language of the leases addressed in Gabl, Gifford also argues that absent an express disclaimer for negligence in section 17 of the lease, Branchflower is liable for property damage caused by breach of the duty to repair the roof.

In Gabl, commercial tenants sued the landlord for negligence and damage to property. Gabl, 6 Wn. App. at 881. One of the commercial leases in Gabl provided, in pertinent part:

> "All personal property . . . in the leased premises shall be at the Lessees' sole risk, and Lessor shall not be liable for any damage done to, or loss of, such personal property . . . caused in any manner whatsoever."

Gabl, 6 Wn. App. at 882-83. The other commercial lease provided, in pertinent part:

> "All personal property on said leased premises shall be at the sole risk of lessees, and lessor shall not be liable for any damage, either to person or property sustained by lessees or others, . . . due to the happening of any accident from whatsoever cause in or about said building."

Gabl, 6 Wn. App. at 883.

The tenants argued that the exculpatory provisions in the leases that state the landlord is not liable for damages to property caused by the landlord's negligence were "void as against public policy and should not be enforced." Gabl, 6 Wn. App. at 883. The court rejected the tenants' argument, concluding that the "limitation of damages where the loss is commercial is not prima facie unconscionable." Gabl, 6 Wn. App. at 884. Because the bargaining position of the landlord and the commercial tenants was "not unequal and the distribution of the risks entailed no elements of injustice," we held that "[t]o shift liability from the commercial tenant to the landlord without regard to the

7

other provisions of the lease could cause, rather than cure, inequity," and affirmed summary judgment dismissal of the negligence claim for property damage. Gabl, 6 Wn. App. at 881, 884. Here, as in Gabl, the plain language of section 17 of the commercial lease limits the liability of the landlord for property damage.[2]

We affirm summary judgment dismissal of the breach of contract lawsuit against Branchflower. Under section 21 of the lease and upon compliance with RAP 18.1, Branchflower is entitled to an award of reasonable attorney fees and costs on appeal.[3]

WE CONCUR:

---

[2] We reject Gifford's attempt to rely on inapposite preinjury releases in tort cases. See Vodopest v. MacGregor, 128 Wn.2d 840, 913 P.2d 779 (1996) (negligence suit brought by an injured hiker arguing the exculpatory clause in a preinjury release violated public policy); Baker v. City of Seattle, 79 Wn.2d 198, 484 P.2d 405 (1971) (personal injury suit against a golf course owner and golf cart lessors where the injured party argued that the liability disclaimer was void as against public policy); Chauvlier v. Booth Creek Ski Holdings, Inc., 109 Wn. App. 334, 35 P.3d 383 (2001) (negligence suit brought by an injured skier arguing the liability release he signed was unenforceable because the language was not sufficiently clear, was inconspicuous, and violated public policy). Markel Am. Ins. Co. v. Dagmar's Marina, LLC, 139 Wn. App. 469, 161 P.3d 1029 (2007), is also inapposite as it involves maritime law.

[3] Section 21 of the lease provides, in pertinent part: "If, by reason of any default or breach on the part of either party in performance of any of the provisions of this Lease, a legal action is instituted, the losing party agrees to pay all reasonable costs and attorney fees in connection therewith."