[Civ. No. 26297. First Dist., Div. Four. Feb. 26, 1971.]

BURLINGAME MOTOR COMPANY, INC.,
Cross-complainant and Appellant, v.
PENINSULA ACTIVITIES, INC., et al.,
Cross-defendants and Respondents.

## COUNSEL

Maloney, Chase, Fisher & Hurst and Harold J. Chase for Cross-complainant and Appellant.

Hanna & Brophy, Donald R. Brophy, Channell, McNamara & Lewis, William R. Channell and Richard G. Logan for Cross-defendants and Respondents.

## OPINION

**DEVINE, P. J.**—Indemnity among tortfeasors is the subject of this appeal.

On May 5, 1961, Edward Bister, an employee of Dick Bullis, Inc., an automobile dealer, was injured by an explosion in the company's paint shop. He was pumping gasoline from a drum. A moment before the explosion he heard a sound like that of two wires shortcircuiting each other. There were, in fact, as testified by the fire inspector, who investigated the accident, two bare hot wires close by. Bister sued Mausser Electric Company, Inc., Burlingame Motor Company, Inc. (hereinafter sometimes referred to as Burlingame Motors), and Peninsula Activities, Inc. In the action so far as it affected plaintiff, Bister, there was a trial by jury on the issue of liability but not on that of damages. The jury's verdict was in favor of plaintiff and against Burlingame Motors and Peninsula Activities, but was in favor of defendant Mausser Electric Company. By stipulation of the interested parties, judgment was entered in favor of the plaintiff and against the two defendants theretofore found liable, in the sum of $250,000.

During the pendency of plaintiff's case, Burlingame Motors cross-complained against Dick Bullis, Inc., and State Compensation Insurance Fund, the workmen's compensation carrier for Dick Bullis, Inc.[1] Later, the cross-complaint brought in by amendment the cross-defendant, Peninsula Activities. Indemnity was sought against both cross-defendants for $250,000 plus counsel fees and costs.

The relationship of the parties is this: Burlingame Motors was lessee of premises used in the automobile business. The owner-lessor was Mazie Bromberg, wife of the president of Burlingame Motors. Burlingame Motors subleased the entire premises to Peninsula Activities, which in turn, in 1958, subleased the rear half of the property to Dick Bullis, Inc. In 1959, while the Peninsula Activities lease was in full force and effect, Dick Bullis,

---

[1]The cross-complaint against State Compensation Insurance Fund was simply to foreclose any recovery by the Fund from the cross-complainant. Judgment was entered against the Fund, the jury having found its insured, Dick Bullis, Inc., negligent. The Fund has not appealed and it has disappeared from the case.

Inc. began occupying the entire property as a showroom for its cars. Thereafter, Bullis, Inc. remitted the monthly rental to appellant, Burlingame Motors, on behalf of Peninsula Activities. Appellant was advised of this arrangement and at no time objected.

On February 23, 1961, the sublease between Burlingame Motors and Peninsula Activities was terminated and a written sublease was executed between appellant and Dick Bullis, Inc., to be effective May 1, 1961. The indemnity provision upon which appellant relies, in so far as its claim depends upon express indemnity, is not spelled out in either of the subleases (that is, to Peninsula Activities and to Dick Bullis, Inc.), but is incorporated in each of them by reference as it is set forth in the master lease from Mazie Bromberg to Burlingame Motors. It reads: "The lessee, as a material part of the consideration to be rendered to the lessor under this lease, hereby waives all claims against the lessor for damages to goods, wares and merchandise, in, upon or about the said premises and for injuries to persons in or about the said premises, from any cause arising at any time, and the lessee will hold the lessor exempt and harmless for and on account of any damage or injury to any person, or to the goods, wares and merchandise of any person, arising from the use of said premises by the lessee, or arising from the failure of the lessee to keep the premises in good condition and repair, as herein provided. The lessee shall take out and keep in force during the term thereof, at the lessee's expense, public liability insurance in companies satisfactory to the lessor against any liability to the public incident to the use of or resulting from any accident occurring in or about the said premises, in the amount of $          to indemnify against the claim of one (1) person, and $          against the claims of two (2) or more persons for injuries to the person and $25,000.00 against any claim for injury to property. The same shall insure the contingent liability of the lessor and copies of the said policies or certificates thereof shall be deposited with the lessor; and the lessee shall obtain the written agreement of the insurors to notify the lessor in writing prior to any cancellation of insurance."

Burlingame Motors offered to sell to Dick Bullis, Inc. a compressor, but the offer was declined. A large amount of equipment had to be removed by Burlingame Motors, so that it retained the right in the lease to occupy that part of the shop in which the compressor was until August 1, 1958, paying rent for the limited occupancy. The sublease also provided that Burlingame Motors could remove certain equipment. The compressor was removed, probably on July 30 or 31, 1958. In the original personal injury trial, there was conflict of evidence as to who actually did the removing, but the jury has resolved this conflict and for present purposes it may be taken as established that one or more employees of Burlingame Motors,

who were untrained in matters electrical, disconnected the compressor and left protruding the two wires which, three years later, became a cause of the accident. This condition was discovered by Doug Tipton, an employee of Dick Bullis, Inc., who checked the wires and found them to be hot. He and Bud Mitchell, another employee of Dick Bullis, Inc., found and removed the fuses which controlled the hot wires, which were then taped and tucked behind the conduit. Tipton reported the incident to Richard Bullis, who approved and thought that Tipton had done the proper thing. Mr. Bullis was president not only of Dick Bullis, Inc., but also of Peninsula Activities, Inc. There was a close relationship between these two sublessees.

During the two years that he worked in the area near the wires, Tipton noticed that some of the employees would put the fuses back in and throw the switch to an "on" position. In order to prevent this, he wrote on the switch box the words "Leave Off," and he also advised fellow workers not to throw the switch on.

While the Peninsula Activities lease was still in effect, Dick Bullis, Inc. supervised, controlled and directed the move of its paint and body shop to the leased premises. The shop was established in the area where the live wires were located. At the time of the accident Bister was working in the paint shop. It is undisputed that sparking from the live wires onto the gasoline vapors brought about the explosion.

### The Case Against Peninsula Activities, Inc.

Following the jury's verdict in the personal injury case and the fixing by stipulation of the amount of damages due to Bister, the court proceeded with the next stage of a trifurcated trial, the action of Burlingame Motors against Peninsula Activities' implied or equitable indemnity. When the accident happened, the lease between Burlingame Motors and Peninsula Activities had terminated; wherefore, contractual indemnity was not an issue.

There was a good deal of discussion as to whether the jury should render a verdict or should answer an "interrogatory." The judge decided upon the latter but following the jury's answer, which was given unanimously, that the negligence of Burlingame Motors was active, the judge made a finding to that effect. At this second stage of the trial, the jury, by stipulation of the two parties to it, Burlingame Motors and Peninsula Activities, was allowed to consider all of the evidence which had been put before it at the first stage. The terms of the lease and of the sublease were permitted to be presented and argued to the jury, with the exception of the indemnity clause, in order to show the relationship between the parties and the duty on the part of the sublessee to keep the premises in good repair.

During the personal injury phase of the case, plaintiff Bister's counsel had argued to the jury, obviously with telling effect, that the negligent leaving of the wires in an exposed condition by Burlingame Motors' employees created a "time bomb." This, he argued, was a proximate cause, although there were concurring causes. In the indemnity trial, counsel for Peninsula Activities adopted the "time bomb" argument, again with persuasive effect. Counsel for Peninsula Activities argued that not only was there a considerable length of time between the removal of the compressor and the explosion, but also the employees of Dick Bullis, Inc., whose actions were ratified by the president of Peninsula Activities, knew of the condition of the wires and were willing to have them remain in the taped condition and, indeed, Mitchell had been uncertain at first whether he might not make some use of the protruding wires (although he did not say so to any employee of Burlingame Motors). Other arguments were offered on both sides, at the end of which the jury decided an essentially factual question which the court, by its judgment and by its order denying the motion for new trial, approved.

We have no hesitancy in following the decision of the jury to the effect that the negligence of appellant was of active character. The removal of the compressor was done, and the creating of the perilous condition was effected by Burlingame Motors itself. This was not a situation in which a third person had acted negligently (as an electrical contractor might have done), and Burlingame Motors merely failed, negligently, to discover the condition. Burlingame Motors chose to do the work itself and did so negligently.

We do not find substantial, if any, error in the course of the indemnity trial. Appellant complains that the decision was by interrogatory rather than by verdict. Actually, however, the jury did render a special verdict, as described in Code of Civil Procedure, section 624, and did not merely answer an interrogatory, although the word "interrogatory" was sometimes used. A special interrogatory is a question put in order to test the validity of a general verdict, whereas a special verdict decides the ultimate facts, following which judgment is rendered by the court. (2 Witkin, Cal. Procedure (1954) §§ 80, 81, pp. 1810-1812.)

The jurors were adequately informed by the instructions. Although, as appellant says, passive negligence was not given a formal definition, the jury was told that failure to carry out an obligation imposed by law, in which a party does not personally participate in any affirmative act of negligence, is but passive negligence, and that liability of Burlingame Motors, if it were based on a mere breach of the provisions of the lease, would be passive. A reading of the entire charge to the jury and of the quite lengthy arguments made by counsel shows that the jury must have

understood the distinction between the two kinds of negligence. Appellant protests that there was error in the instruction that "Peninsula Activities, Inc., was not obligated or is bound under the provisions of the leases in evidence to indemnify Burlingame Motors for the consequences of its own active negligence." Appellant asserts that this instruction tells the jury by the words "its own active negligence" that as a fact any negligence of appellant was active. Under all of the circumstances, the jury could not have drawn this meaning. The whole contest at the second stage was on the subject of active versus passive negligence. The jury heard the words time and again from counsel for both parties, each explaining the meaning of the words, and they heard a carefully drawn set of instructions, including the admonition that it was their exclusive province to determine the facts in the case.

Finally, the special verdict posed the single inquiry: was the negligence of Burlingame Motors (which the jury theretofore had decided did exist) active or passive? The jury knew that the court had not decided this question, else the trial would have been a sham.

We find no ground for reversal of the judgment in favor of Peninsula Activities on the cross-complaint.

### The Case Against Dick Bullis, Inc.

In the third part of the trifurcated trial, it was agreed by the parties that there was no issue of implied indemnity, but only that of contractual indemnity. This was proper because when there is an express contract of indemnity the extent of the indemnitor's duty must be determined from the contract and not from the independent doctrine of equitable indemnity (*Price* v. *Shell Oil Co.*, 2 Cal.3d 245, 256 [85 Cal.Rptr. 178, 466 P.2d 722]; *Markley* v. *Beagle*, 66 Cal.2d 951, 961 [59 Cal.Rptr. 809, 429 P.2d 129]), and besides, since Dick Bullis, Inc. was the employer of the injured person any action against it upon indemnity must be based on contract, under the provisions of section 3864 of the Labor Code. The sublease to Dick Bullis, Inc., made on February 23, 1961, a three-page typewritten instrument, contains the following provision incorporating the master lease from Mazie Bromberg to Burlingame Motors: "Except as herein otherwise provided, all of the terms and conditions of the master lease of the premises above referred to are hereby made a part hereof, Sublessor herein being considered as if Lessor, and Sublessee herein being considered as if Lessee therein; provided, however, that Sublessee shall not be obligated to pay any rent under the master lease except the rent herein reserved." It is not disputed that this paragraph incorporates the indemnity provision which is set forth above. The indemnity paragraph is in very broadly drawn

terms and makes no reference whatever to the effect of negligence by the lessor, that is, whether negligence, either active or passive, would bar recovery by the lessor-indemnitee.

■ The applicable principles are (a) the agreement for indemnification must be strictly construed against the indemnitee, and (b) in order to include acts amounting to active or affirmative negligence, the indemnity provision must be clear, positive and specific to that effect. (*Goldman* v. *Ecco-Phoenix Elec. Corp.,* 62 Cal.2d 40, 44 [41 Cal.Rptr. 73, 396 P.2d 377]; *Price* v. *Shell Oil Co.,* 2 Cal.3d 245, 258 [85 Cal.Rptr. 178, 466 P.2d 722]; *Vinnell Co.* v. *Pacific Elec. R. Co.,* 52 Cal.2d 411, 415 [340 P.2d 604].) The trial judge, applying these principles, concluded that Dick Bullis, Inc. did not contract to indemnify Burlingame Motors from the consequences of its own active negligence, and he made an independent finding over and above the jury's special verdict that Burlingame Motors was guilty of active negligence that was a proximate cause of the accident.

We do not find the master lease between Mazie Bromberg and Burlingame Motors, as incorporated into the Peninsula Activities sublease, to include specifically affirmative negligence on the part of the lessor as a subject of indemnity. What is indemnified is injury to any person arising from the use of the premises by lessee or arising from the lessee's failure to keep the premises in good condition and repair. The fact that reference to public liability insurance is made does not, in our opinion, strengthen the indemnity provisions, as appellant contends, but rather weakens them because no amount of insurance for injuries to persons has been specified, the spaces provided for the figures being left blank. The lease itself is a printed form of multiple provisions, and it is obvious that the parties simply did not bother to complete what would be an important provision, the amount of insurance. Of course, without a figure the insurance provision itself was ineffective. It was stipulated that at no time did Burlingame Motors make any demand or inquiry about public liability insurance to be provided for its benefit by the sublessee.

■ Appellant contends, first, that the jury's decision as to the character of appellant's negligence vis-à-vis Peninsula Activities is ineffectual in resolving the character of its negligence as related to Dick Bullis, Inc., and that it had demanded a jury as to the third part of the trifurcated trial; and second, that even if its own negligence be regarded as active, the sublease, when considered in the light of all the circumstances, must be regarded as including indemnity for the indemnitee's own active negligence.

As to the first of these contentions, we hold that the principle of collateral estoppel, as declared in *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.,* 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439]; *People* ex rel. *State*

*of Cal.* v. *Drinkhouse,* 4 Cal.App.3d 931 [84 Cal.Rptr. 773]; and *King* v. *Timber Structures, Inc.,* 240 Cal.App.2d 178 [49 Cal.Rptr. 414], applies. We know of no case in which it has been held that a party's negligence can be active as to one person and inactive as to another. The very nature of the inquiry into the kind of negligence is to determine whether the fault was that of an actor in the events rather than that of a person on whom responsibility has been fastened by operation of law or by mere inaction, such as failure to make a discovery. Besides the jury's verdict, there is the independent finding by the trial judge. Since the question may be one of mixed fact and law (*Aerojet General Corp.* v. *D. Zelinsky & Sons,* 249 Cal. App.2d 604, 610 [57 Cal.Rptr. 701]), this finding is not without effect. Besides, although respondent Bullis, Inc. does not urge this point, we might be persuaded to regard appellant's negligence as of the active character as a matter of law. (See *Cahill Bros., Inc.* v. *Clementina Co.,* 208 Cal. App.2d 367, 382-383 [25 Cal.Rptr. 301]; *Pearson Ford Co.* v. *Ford Motor Co.,* 273 Cal.App.2d 269, 275 [78 Cal.Rptr. 279].)

We turn to appellant's contention that the parties intended to cover the liability of Burlingame Motors, even considering its action to have been that of active negligence. Appellant's argument is that, in contrast to the situation affecting Peninsula Activities, there was no re-entry onto the premises by Burlingame Motors. The compressor had been removed almost three years before the time of the sublease to Dick Bullis, Inc. Therefore, argues appellant, the indemnity agreement as incorporated into the sublease of February 23, 1961, was intended to protect the sublessor against just such things as the faulty severance of the wires, especially because the sublessee not only knew of the condition that had been caused, but it actually attempted to remedy it by the wholly ineffectual means of taping the wires and of removing the fuses whenever they were replaced by its own employees, and the sublessee had brought in the paint shop with the flammables, even though it knew of the condition of the wiring.

If comparative negligence were the law as between indemnitor and indemnitee, appellant's argument might be persuasive. But comparative negligence does not apply. Nor does the doctrine of last clear chance. (*Atchison, T. & S. F. Ry. Co.* v. *Lan Franco,* 267 Cal.App.2d 881, 890 [73 Cal.Rptr. 660]; *King* v. *Timber Structures, Inc.,* 240 Cal.App.2d 178, 182 [49 Cal.Rptr. 414]; *Cobb* v. *Southern Pac. Co.,* 251 Cal.App.2d 929, 933 [59 Cal.Rptr. 916].) It is sufficient cause to deny indemnity that the indemnitee was guilty of active negligence which was a proximate cause of the accident and that the indemnity agreement does not purport to exculpate the indemnitee from this kind of fault. If there had been a provision in the master lease requiring the sublessee to hold its lessor harmless, even for the loss under acts of negligence, it is quite possible that the

sublessee would not have agreed to so broad an indemnity (assuming that the officers did read the lengthy, stationery-store master lease, which we must assume). Moreover, there is an element of public policy involved, because although agreement to indemnify for negligence does not in itself violate public policy (*Goldman* v. *Ecco-Phoenix Elec. Corp.*, 62 Cal.2d 40, 48 [41 Cal.Rptr. 73, 396 P.2d 377]; *John E. Branagh & Sons* v. *Witcosky*, 242 Cal.App.2d 835, 838-839 [51 Cal.Rptr. 844]), nevertheless, the shifting of responsibility from one person at fault to another, not only for the contribution which is provided by law, but for the entire amount of damages, is not particularly conducive to practices of safety.

Appellant argues that Dick Bullis, Inc. agreed in the sublease that the premises were in good repair as of February 23, 1961, and that they would be kept in good repair. This, says appellant, was done even though Dick Bullis, Inc. knew of the condition of the wiring and had acted upon it in the taping, removing of fuses, etc. But it is doubtful that the sublease goes so far as to incorporate the provisions of the master lease, because the sublease is specific on the subject, saying only: "Sublessee shall have the sole responsibility for the upkeep, maintenance and repair of the premises and shall leave them in the same condition as when received." The purpose of this is, at least in part, simply to guarantee that the premises will be returned in the same condition as that at the beginning of the sublease. But whatever the meaning of these clauses might be in connection with other matters, the clauses are not incorporated into the indemnity provision of the master lease, which in turn is incorporated by reference into the sublease. We note that the California standard has been described as " 'the *simple rule* that where the parties fail to refer expressly to negligence in their contract such failure evidences the parties' intention not to provide for indemnity for the indemnitee's negligent acts.' " (Italics supplied. *Vinnell Co.* v. *Pacific Elec. Ry. Co.*, 52 Cal.2d 411, 415 [340 P.2d 604]; *Price* v. *Shell Oil Co.*, 2 Cal.3d 245, 257, fn. 12 [85 Cal.Rptr. 178, 466 P.2d 722].)

Appellant cites cases to support its proposition that where the intent of the parties is clear to the effect that even affirmative negligence of the indemnitee is the subject of indemnity, the contract will be so construed even if this wording be too broad so to provide specifically. Assuming that this proposition may be valid, the cases cited do not allow it to be applied to the case before us. In *Harvey Mach. Co.* v. *Hatzel & Buehler, Inc.*, 54 Cal.2d 445 [6 Cal.Rptr. 284, 353 P.2d 924], despite language generally in agreement with appellant's theory, the indemnitee was not guilty of active but only of passive negligence, and this was said by the court to be the most significant factor in sustaining indemnity. In *Schackman* v. *Universal Pictures Co.*, 255 Cal.App.2d 857 [63 Cal.Rptr. 607], there was a one-time

hiring for small rent of a shooting gallery by a moving picture company, with a contract drawn for the single occasion (not merely incorporated from a printed form), and the risk (accidental discharge of a gun) was an obvious one of the brief, single-purpose renting. In *Atchison, T. & S. F. Ry. Co.* v. *James Stewart Co.,* 246 Cal.App.2d 821 [55 Cal.Rptr. 316], the railway gave Stewart, a contractor, a favor without any consideration: the right to cross railroad tracks for a limited time provided a flagman were present. The accident occurred because the indemnitor did not have the flagman present. In *John E. Branagh & Sons* v. *Witcosky,* 242 Cal. App.2d 835 [51 Cal.Rptr. 844], the indemnity agreement expressly said that it covered everything except injury caused solely and exclusively by fault of the indemnitee. In *Indenco, Inc.* v. *Evans,* 201 Cal.App.2d 369 [20 Cal.Rptr. 90], the indemnitor, a subcontractor, had specifically agreed to provide the safety precautions required in the master contract, among which was a demand for guard rails. Lack of rails caused the accident. *Davidson* v. *Welch,* 270 Cal.App.2d 220 [75 Cal.Rptr. 676], is a case in which extrinsic evidence reasonably showed that an employee was to be indemnified, and the judgment for the indemnitee therefore was affirmed.

To sum up, we perceive a very general indemnity clause in a lengthy printed contract which itself is not signed by the sublessee, but is incorporated by reference, in which no mention is made of affirmative negligence (or, indeed, of negligence), an agreement so indifferently regarded by all parties, the original lessor and lessee, the lessee who had become sublessor, and the two successive sublessees, that no one bothered to have the amounts of liability insurance inserted or to inquire if insurance had been provided. We see a case of flagrant negligence of agents of all parties, which caused a serious accident. We do not find a case which calls for the shifting of the burden of liability, either by independent, implied indemnity or by contract.

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.