[No. 50855–1. En Banc. July 18, 1985.]

NORTHWEST AIRLINES, *Respondent,* v. HUGHES AIR CORPORATION, *Petitioner.*

*Reed, McClure, Moceri, Thonn & Moriarty,* by *William R. Hickman* and *Gary A. Western,* for petitioner.

*Karr, Tuttle, Koch, Campbell, Mawer & Morrow, P.S.,* by *Philip A. Talmadge, Frederick M. Meyers,* and *Mark R. Johnsen,* for respondent.

GOODLOE, J.—This case involves an action by respondent Northwest Airlines against petitioner Hughes Air Corporation seeking to enforce the indemnification clause in their commercial lease agreement. The trial court granted summary judgment for Hughes. The Court of Appeals, Division One, reversed. *Northwest Airlines v. Hughes Air Corp.,* 37 Wn. App. 344, 679 P.2d 968 (1984). We affirm the Court of Appeals decision.

Hughes leased from Northwest a portion of an air cargo building owned and partially occupied by Northwest. The commercial lease agreement had an indemnity clause which provided:

> *Indemnity. Lessee [Hughes] shall indemnify the Lessor [Northwest]* from and against any and all claims, demands, causes of action, suits or judgments (including costs and expenses incurred in connection therewith) for deaths or injuries to persons or for loss of or damage to property *arising out of or in connection with the use and occupancy of the premises* by Lessee, its agents, servants, employees or invitees *whether or not caused by Lessor's negligence.* In the event of any claims made or suits filed, Lessor shall give Lessee prompt written notice thereof and Lessee shall have the right to defend or settle the same to the extent of its interest hereunder.

(Italics ours.) Clerk's Papers, at 113.

A Hughes employee, David Walquist, while carrying a coffee urn through part of the air cargo building occupied by Northwest, slipped on oil from a pallet jack and was injured. Walquist sued Northwest for damages. Northwest twice tendered defense of the action to Hughes, but Hughes

refused to defend. Northwest settled the claim with Walquist for $225,000.

Northwest sought indemnification, pursuant to the commercial lease agreement, from Hughes. Following cross motions for summary judgment, the trial court granted Hughes' motion and denied Northwest's motion. The Court of Appeals, Division One, reversed. *Northwest Airlines v. Hughes Air Corp., supra.*

The Court of Appeals addressed two issues. First, the Court of Appeals found the indemnification clause contained the necessary waiver of Hughes' employer industrial insurance immunity to be enforceable. *Hughes Air Corp.,* at 346. We have already approved this determination, applying a different analysis, in *Brown v. Prime Constr. Co.,* 102 Wn.2d 235, 240 n.3, 684 P.2d 73 (1984). Hughes has abandoned the issue before this court. Second, the Court of Appeals found the indemnification clause, which explicitly provides that Hughes will indemnify Northwest for injuries whether or not caused by lessor's negligence, is enforceable and not against public policy. *Hughes Air Corp.,* at 347–49. This issue is before us and we affirm.

The general rule in Washington, and other states, is that a party may contractually indemnify against loss resulting from that party's own negligence, unless prohibited by statute or public policy. No Washington statute prohibits use of indemnification clauses for indemnitee's sole negligence in commercial leases. The Washington courts have repeatedly held that it is not against public policy for parties to enter into indemnity agreements in commercial leases whereby one party contractually agrees to indemnify, to be financially responsible for, the other party's negligence. *Griffiths v. Henry Broderick, Inc.,* 27 Wn.2d 901, 182 P.2d 18, 175 A.L.R. 1 (1947); *Union Pac. R.R. v. Ross Transfer Co.,* 64 Wn.2d 486, 392 P.2d 450 (1964); *Gabl v. Alaska Loan & Inv. Co.,* 6 Wn. App. 880, 496 P.2d 548 (1972); *Marr Enters., Inc. v. Lewis Refrigeration Co.,* 556 F.2d 951 (9th Cir. 1977).

Analysis commences with the general rule that a contract

of indemnity will not be construed to indemnify the indemnitee against losses resulting from his own negligence unless this intention is expressed in clear and unequivocal terms. 41 Am. Jur. 2d *Indemnity* § 15 (1968); 42 C.J.S. *Indemnity* § 7 (1944).

Washington initially found, and some state courts currently find, a clear and unequivocal intention to indemnify for indemnitee's own negligence by looking at the entire contract or at the all–encompassing language of the indemnification clause; the term negligence itself need not actually be used. *Griffiths,* at 906; *Moore v. Standard Paint & Glass Co.,* 145 Colo. 151, 159, 358 P.2d 33 (1960); *Bedal v. Hallack & Howard Lumber Co.,* 226 F.2d 526, 539–40 (9th Cir. 1955) (applying Idaho law); *Rios v. Field,* 132 Ill. App. 2d 519, 521–22, 270 N.E.2d 98 (1971); *Bartlett v. Davis Corp.,* 219 Kan. 148, 156–57, 547 P.2d 800 (1976); *Blue Grass Restaurant Co. v. Franklin,* 424 S.W.2d 594, 599 (Ky. Ct. App. 1968); *Amelio v. New York City Housing Auth.,* 74 A.D.2d 752, 425 N.Y.S.2d 587, *aff'd,* 51 N.Y.2d 885, 414 N.E.2d 709, 434 N.Y.S.2d 210 (1980); *Levine v. Shell Oil Co.,* 28 N.Y.2d 205, 269 N.E.2d 799, 321 N.Y.S.2d 81 (1971); *Hogeland v. Sibley, Lindsay & Curr Co.,* 42 N.Y.2d 153, 366 N.E.2d 263, 397 N.Y.S.2d 602, 4 A.L.R.4th 790 (1977); *Waggoner v. Oregon Auto. Ins. Co.,* 270 Or. 93, 97–98, 526 P.2d 578 (1974); *Mitchell's, Inc. v. Friedman,* 157 Tex. 424, 430, 303 S.W.2d 775 (1957); *Hastreiter v. Karau Bldgs., Inc.,* 57 Wis. 2d 746, 749, 205 N.W.2d 162 (1973).

▉ Washington currently requires, as do some other states, that more specific language be used to evidence a clear and unequivocal intention to indemnify the indemnitee's own negligence. *Dirk v. Amerco Mktg. Co.,* 88 Wn.2d 607, 612–13, 565 P.2d 90 (1977); *Calkins v. Lorain Div. of Koehring Co.,* 26 Wn. App. 206, 210, 613 P.2d 143 (1980); *Scruggs v. Jefferson Cy.,* 18 Wn. App. 240, 244, 567 P.2d 257 (1977); *American Auto. Ins. Co. v. Seaboard Sur. Co.,* 155 Cal. App. 2d 192, 197–98, 318 P.2d 84 (1957); *Burlingame Motor Co. v. Peninsula Activities, Inc.,* 15 Cal.

App. 3d 656, 93 Cal. Rptr. 376 (1971); *Scarboro Enters., Inc. v. Hirsh,* 119 Ga. App. 866, 870, 169 S.E.2d 182 (1969); *Vernon Fire & Cas. Ins. Co. v. Graham,* 166 Ind. App. 509, 514, 336 N.E.2d 829 (1975); *Straley v. Calongne Drayage & Storage, Inc.,* 350 So. 2d 1231, 1233 (La. Ct. App. 1977); *Laskowski v. Manning,* 325 Mass. 393, 398–99, 91 N.E.2d 231 (1950); *Commerce Trust Co. v. Katz Drug Co.,* 552 S.W.2d 323, 326 (Mo. Ct. App. 1977); *Govero v. Standard Oil Co.,* 192 F.2d 962, 964–65, (8th Cir. 1951) (applying Missouri law); *Ocean Accident & Guar. Corp., Ltd. v. Jansen,* 203 F.2d 682, 685–86 (8th Cir. 1953) (applying Nebraska law); *Longi v. Raymond–Commerce Corp.,* 34 N.J. Super. 593, 603, 113 A.2d 69 (1955); *Law v. Reading Co.,* 312 F.2d 841, 844–45 (3d Cir. 1963) (applying Pennsylvania law); *Barrus v. Wilkinson,* 16 Utah 2d 204, 206, 398 P.2d 207 (1965).

But in all cases, the mere existence of an indemnification clause attempting to indemnify the indemnitee from its own negligence was never found to be against public policy.

The clause involved in this case explicitly refers to injuries "whether or not caused by Lessor's [Northwest's] negligence." Clerk's Papers, at 113. Even under the more stringent requirement, the involved indemnification clause clearly includes coverage for the indemnitee's negligence.

Hughes argues that the Court of Appeals decision conflicts with *Brame v. St. Regis Paper Co.,* 97 Wn.2d 748, 649 P.2d 836 (1982) and *Jones v. Strom Constr. Co.,* 84 Wn.2d 518, 527 P.2d 1115 (1974). Petitioner also asserts that *Brame* and *Jones* stand for the proposition that, as a matter of law, an indemnity agreement cannot be construed to require an indemnitor to hold harmless the indemnitee for losses resulting solely from the indemnitee's own negligence. Petitioner misreads these cases.

In *Jones,* a subcontractor agreed to indemnify the contractor from any claims "'arising out of,' 'in connection with,' or 'incident to' *[the subcontractor's] 'performance' of the subcontract.*" (Italics ours.) *Jones,* at 521. An employee of the subcontractor was injured when the flooring on which

he was working collapsed due to lack of shoring beneath it. The contractor was responsible for the decision not to shore beneath the flooring. The trial court granted a directed verdict in favor of the contractor against the subcontractor in a third party action for indemnification. This court reversed, looking at the language of the indemnification clause. The clause referred only to the subcontractor's performance; it made no mention of or reference to the contractor's performance. Construing the language strictly, we held that the involved indemnification clause required an act or omission by the subcontractor in performance of the subcontract for it to be applicable. *Brame* involved the construction of an indemnity provision identical to the one in *Jones. Brame,* at 750–51.

Petitioner relies heavily on language in *Redford v. Seattle,* 94 Wn.2d 198, 615 P.2d 1285 (1980). In *Redford,* we held that an employer's industrial insurance act immunity from claims of its injured employees does not preclude the enforcement of an independent written agreement obligating the employer to indemnify a third person for losses resulting from such claims. *Redford,* at 203–04. We explained that "*Jones* merely limited the scope of such indemnification agreements to those cases in which some activity of the employer contributed to the injury." *Redford,* at 205. Petitioner erroneously asserts that this language requires employer negligence before any indemnification clause will be enforced. Reading this language in context, the "such indemnification agreements" referred to in this passage are agreements which require, by their language, the subcontractor's performance be involved before the clause is applicable. *Jones* held only that the language of the indemnity clause involved in that case could not be construed to require indemnification where the acts of the indemnitee were the sole cause of the injury.

In *Jones,* while outlining the rules for interpreting indemnification clauses, we said:

[C]lauses which purport to exculpate an indemnitee from liability for losses flowing solely from his own acts or

omissions are not favored and are to be clearly drawn and strictly construed, with any doubts therein to be settled in favor of the indemnitor; . . .

*Jones,* at 520. Clearly, these rules do not say that indemnification clauses are void as against public policy or that, as a matter of law, an indemnitor cannot be held responsible for an indemnitee's sole negligence. What these rules require is that, for an indemnitor to be found responsible for the indemnitee's own negligence, the agreement must be clearly spelled out. The Northwest–Hughes lease clearly spells out an agreement for indemnity even when Northwest is negligent.

Some states have enacted statutes prohibiting, in general, indemnification clauses for an indemnitee's own negligence. *See* Md. Real Prop. Code Ann. § 8–105 (1981); N.Y. Gen. Oblig. Law § 5–321 (McKinney 1978); S.D. Codified Laws § 53–9–3 (1980). Should our Legislature decide to do this, then a different question would be presented. Presently, only RCW 4.24.115, addressing indemnification clauses in construction contracts, has been enacted. Statutory prohibition against one's sole negligence in the construction setting is not applicable in the commercial lease setting.

In the commercial lease area,

> We know of no public policy which would prevent a landlord and a tenant from agreeing that the tenant should assume, and agree to indemnify the landlord against, the risk of loss, damage and injuries occurring on the premises during the term of the lease, whether due to the negligence of the landlord or not. As the Supreme Court of the United States said in Santa Fe, Prescott & Phoenix Railway Co. v. Grant Brothers Construction Co. [228 U.S. 177, 188], page 478 of 33 S.Ct., 57 L.Ed. 787: "* * * There is no rule of public policy which denies effect to their [the contracting parties'] expressed intention, but, on the contrary, as the matter lies within the range of permissible agreement, the highest public policy is found in the enforcement of the contract which was actually made."

*Govero v. Standard Oil Co.,* 192 F.2d 962, 964–65 (8th Cir. 1951) (applying Missouri law). *Accord, Gabl v. Alaska Loan*

*& Inv. Co.,* 6 Wn. App. 880, 884, 496 P.2d 548 (1972).

The Court of Appeals was correct in holding this commercial lease indemnity provision did not violate public policy.

■ Petitioner also argues that the indemnification clause should not apply because the injury occurred outside the actual premises Hughes leased from Northwest. Hughes cites no authority for this proposition. The pertinent language of the indemnification clause is "arising out of or in connection with the use and occupancy of the premises by Lessee . . ." Clerk's Papers, at 113. To reach the result desired by Hughes, we would have to substitute "on the premises" for the above language. This we will not do. A reasonable interpretation of this language indicates a clear intent to protect Northwest from all liability arising in connection with the lease of a portion of the building to Hughes. The Hughes employee being in the Northwest area was connected to Hughes' use and occupancy, as the restrooms and sink for coffee were in Northwest's area. Northwest expected, and Hughes instructed, the Hughes employees to use these facilities.

Summary judgment should have been granted in favor of the lessor–indemnitee, Northwest. The case is remanded to the trial court for further proceedings in accordance with this opinion.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, and DURHAM, JJ., concur.

Reconsideration denied September 20, 1985.