FILED
COURT OF APPEALS
DIVISION II

2013 DEC -3 AM 9: 24

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, a Washington insurance company, | No. 43873-9-II |
| Appellant, | |
| v. | |
| PORT ORCHARD FIRST LIMITED PARTNERSHIP, a Washington limited partnership; SUPPORT SERVICES COMMERCIAL, LLC, a Washington limited liability company, | UNPUBLISHED OPINION |
| Respondents. | |

QUINN-BRINTNALL, P.J. — After a failed real estate transaction between Port Orchard First Limited Partnership ("Port Orchard First") and Support Services Commercial, LLC ("Support Services"), escrow agent Fidelity National Title Insurance Co. ("Fidelity") brought an interpleader action to resolve which party was entitled to a $50,000 earnest money deposit it held. In response, Port Orchard First brought a counterclaim against Fidelity, alleging that it was negligent in performing its fiduciary role as an escrow agent. Port Orchard First and Support Services eventually dismissed all claims against each other and successfully moved the trial court to (1) voluntarily dismiss Port Orchard First's negligence counterclaim against Fidelity, (2) disburse the escrow money to Support Services, and (3) dismiss the action on the pleadings

under CR 12(c) on the grounds that "all claims for relief [had] been granted or dismissed by agreement." Clerk's Papers (CP) at 297.

Fidelity now appeals, arguing that the trial court erred in dismissing the action because the parties' escrow instructions provided that Port Orchard First and Support Services must pay Fidelity's costs and attorney fees for having to defend *any* action related to the real estate transaction—including a permissive counterclaim for Fidelity's own negligence. Port Orchard First maintains that because Fidelity failed to timely plead a contractual indemnity claim, the trial court did not err in dismissing the action on the pleadings.

We affirm the trial court and conclude that even assuming Fidelity properly pleaded a contractual indemnity claim, it would not be entitled to an award of costs and fees for having to defend a negligence action unrelated to the interpleader action because the parties' escrow instructions do not expressly allow for an attorney fee award in such circumstances. In addition, the escrow instructions do not "evidence a clear and unequivocal intention to indemnify" Fidelity from its own negligence. *Nw. Airlines v. Hughes Air Corp.*, 104 Wn.2d 152, 155, 702 P.2d 1192 (1985). Accordingly, the trial court properly concluded that no outstanding claims remained when it dismissed the action on the pleadings.

## FACTS

In May 2009, Support Services agreed to buy the Lund Pointe Apartments from Port Orchard First. Support Services and Port Orchard First engaged escrow company Fidelity to serve as the closing agent. Prior to the scheduled closing of the transaction, Support Services deposited $50,000 with Fidelity per the terms of the parties' purchase and sale agreement, signed all of the closing documents required at escrow, and deposited all the necessary proceeds to execute the sale. Just prior to closing, Port Orchard First attempted to force Support Services to

sign an "affordability agreement," a situation not contemplated by the parties' purchase and sale agreement. In an attempt to resolve the situation, Port Orchard First and Support Services extended the closing date of the transaction to September 7, 2009.

The parties failed to resolve their dispute prior to the September 7 deadline. Port Orchard First later notified Support Services that it would no longer require it to sign an affordability agreement. However, at that point, the time to close the transaction had lapsed and Support Services sought a return of the $50,000 earnest money deposit. Port Orchard First refused to sign a recission agreement allowing Fidelity to return the deposit to Support Services. In October 2009, Fidelity notified Port Orchard First and Support Services that if the parties failed to deliver mutually signed instructions regarding the earnest money deposit by October 23, it would file an interpleader action. This letter specifically notified the parties that "[i]n the event this occurs, the court costs and attorney fees will be deducted from the funds prior to the disbursement to the court designated recipient" of the earnest money deposit. CP at 46.

On December 11, 2009, Fidelity brought an interpleader action in Kitsap County Superior Court pursuant to RCW 4.08.160 and CR 22, and deposited the $50,000 earnest money deposit with the court.[1] Fidelity sought a ruling from the trial court (1) declaring it discharged from its obligations to Support Services and Port Orchard First, (2) requiring Support Services and Port Orchard First to be interpleaded to settle their dispute over the earnest money deposit, (3)

---

[1] RCW 4.08.160 allows "[a]nyone having in his or her possession, or under his or her control, any property or money . . . where more than one person claims to be the owner of [or] entitled to . . . such property [or] money" to "commence an action in the superior court against all or any of such persons, and have their rights, claims, interest, or liens adjudged, determined, and adjusted in such action." CR 22(a) allows a plaintiff to join as defendants "[p]ersons having claims against the plaintiff . . . when their claims are such that the plaintiff is or may be exposed to double or multiple liability."

dismissing it from the interpleader action between Support Services and Port Orchard First, (4) enjoining Port Orchard First and Support Services from legal proceedings against it concerning the deposit, (5) awarding it reasonable costs and attorney fees "upon disposition of the interpleader proceedings," and (6) awarding it "any additional or further relief which the court finds appropriate, equitable or just." CP at 5. Fidelity included a copy of the purchase and sale agreement with its interpleader complaint but did not include a copy of the parties' escrow instructions or specifically allege that Support Services and Port Orchard First should be jointly and severally liable for its costs and attorney fees accrued in defending any action related to the real estate transaction pursuant to the terms of the parties' escrow instructions.

In its answer to the interpleader complaint, Support Services argued that it was entitled to return of the earnest money deposit as "it was the actions of Port Orchard [First] that caused the transaction to fail." CP at 29. Support Services did not bring any counterclaims against Fidelity. Port Orchard First failed to respond to the complaint and in April 2010, Fidelity moved the trial court for the relief requested in its complaint. Fidelity specifically requested "an award of reasonable attorneys' fees and costs incurred in having to file the interpleader action in the amount of $1,522.96."[2] CP at 37.

On May 11, Port Orchard First supplied its answer to the complaint and a motion opposing Fidelity's discharge from the interpleader action. In both the answer and its motion opposing Fidelity's discharge, Port Orchard First counterclaimed that Fidelity acted negligently

---

[2] As with its complaint, Fidelity did not submit the escrow instructions for the trial court's review with this motion or argue that Port Orchard First and Support Services should be held jointly and severally liable for its costs and attorney fees pursuant to the terms of the escrow instructions. Instead, Fidelity argued that as a matter of law, it could not be held liable for any costs accruing in the action pursuant to RCW 4.08.170.

in failing to get extension agreements signed by the parties prior to the expiration of the parties' purchase and sale agreement. Accordingly, it requested that the court deny Fidelity's motion to be discharged from the interpleader action. That same day, Fidelity responded to Port Orchard First's counterclaim, denying that it acted negligently. Fidelity requested "[d]ismissal of Port Orchard First['s] claim against [Fidelity] with prejudice and without award of any fees or costs." CP at 48. Fidelity's response again requested an award of its reasonable costs and attorney fees "upon disposition of the interpleader proceedings." CP at 48. But Fidelity did not request an award of costs or attorney fees specifically related to defending Port Orchard First's negligence action.

Later, Fidelity also submitted a reply to Port Orchard First's motion opposing Fidelity's discharge from the interpleader action. In the reply, Fidelity argued that nothing in the escrow instructions required it to "get closing extension agreements signed by the defendants" and, accordingly, "[a] failure to do something not required by the instructions is not a breach of the escrow agreement or a breach of contract." CP at 86. Thus, Fidelity requested that the trial court grant its motion to discharge it from the interpleader action and "award its reasonable attorney's fees and expenses." CP at 88. Fidelity included (for the first time) the parties' escrow instructions with this motion but failed to specifically argue that the parties should be liable for its costs and attorney fees pursuant to the terms of the escrow instructions.

In June, Fidelity moved for entry of an order dismissing Port Orchard First's counterclaim pursuant to CR 12(b)(6) and again asked that the trial court dismiss it from the interpleader action. This motion requested an award of "reasonable attorney's fees incurred in having to defend Port Orchard [First's] unsupported Counterclaim, directly against Port Orchard [First]." CP at 102. Fidelity argued that Port Orchard First's counterclaim was "entirely

unsupported by law" and, pursuant to CR 11, the trial court should "impose sanctions against Port Orchard [First], to include a reasonable attorney fee in the amount of $3,725.00." CP at 107-08. Fidelity again requested attorney fees and costs incurred in having to file the interpleader action in the amount of $1,522.96. Fidelity's request for relief again failed to contend that Support Services and Port Orchard First should be held jointly and severally liable for its costs and attorney fees pursuant to the terms of the escrow instructions.

After considering the parties' pleadings, affidavits, and argument of counsel, the trial court denied Fidelity's motion to be dismissed from the lawsuit as it would not dismiss Port Orchard First's negligence counterclaim on a CR 12(b)(6) motion. The trial court did, however, award Fidelity $1,652.96, "which represents reasonable attorney fees and costs incurred in bringing this action." CP at 133. Fidelity did not appeal this ruling.

In March 2011, the trial court denied a motion for summary judgment brought by Support Services. Support Services sought to have all of Port Orchard First's claims against it dismissed with prejudice and to be awarded the remainder of the interpleaded funds. In denying the motion, the trial court concluded that "[g]enuine issues of material fact exist." CP at 183. The trial court set the case for trial on June 25, 2012, and the parties began discovery.

On February 17, 2012, Fidelity moved to amend its reply to Port Orchard First's negligence counterclaim after deposing Richard Brown, Port Orchard First's general partner. Fidelity sought to amend its reply to include as a defense to the negligence claim that "Port Orchard [First] lacked express authority to sell the property which is the subject of these proceedings and therefore could not have closed the transaction regardless of any actions taken by [Fidelity]." CP at 199. In addition, Fidelity sought to amend its reply to include an express claim that pursuant to the terms of the parties' escrow instructions, Port Orchard First and

Support Services should be held jointly and severally liable for Fidelity's attorney fees and costs in having to defend Port Orchard First's counterclaim. This claim was based on the following provision of the escrow instructions: "The parties jointly and severally agree to pay the Closing Agent's costs, expenses and reasonable attorney's fees incurred in any legal action arising out of or in connection with the Transaction." CP at 94.

That same day, Port Orchard First moved the trial court to voluntarily dismiss its negligence counterclaim against Fidelity pursuant to CR 41(a)(1)(B).[3] Fidelity opposed the voluntary dismissal to the extent that it believed it had "a contractual right to recover attorney fees under the Escrow Instructions" as explained in its motion to amend. CP at 206. On February 23, Port Orchard First opposed Fidelity's motion to amend its reply to Fidelity's negligence counterclaim, arguing that because the court "must dismiss Port Orchard First's counterclaim under CR 41, Fidelity's motion is moot." CP at 238. Support Services joined Port Orchard First's motion to deny Fidelity's motion to amend its reply. Support Services and Port Orchard First also agreed to dismiss all actions against each other and requested that the earnest money deposit be released to Support Services. On February 28, the trial court granted Port Orchard First's motion for voluntary dismissal and denied Fidelity's motion to amend its reply to the negligence counterclaim. Fidelity did not appeal this ruling.

On March 20, Port Orchard First moved the trial court to release the earnest money deposit to Support Services. Fidelity opposed this motion, arguing that prior to release of the funds, the court should conduct a hearing to determine whether, pursuant to the terms of the parties' escrow instructions, Fidelity's costs and attorney fees related to defending Port Orchard

---

[3] CR 41(a)(1)(B) makes voluntary dismissal mandatory when "[u]pon motion of the plaintiff at any time before plaintiff rests at the conclusion of his opening case."

First's negligence counterclaim should be paid out of the earnest money deposit. In reply, Port Orchard First argued that Fidelity had specifically disclaimed any interest in the earnest money in its complaint and, second, it "did not plead a contractual indemnity claim." CP at 254. On March 30, the trial court granted Port Orchard First's motion to disburse the earnest money deposit to Support Services (less the $1,652.96 previously awarded to Fidelity for having to bring the interpleader action). Fidelity did not appeal this ruling.

On June 22, Port Orchard First and Support Services jointly moved to dismiss the "action on the pleadings under CR 12(c) as all claims for relief have been granted or dismissed by agreement." CP at 297. Port Orchard First and Support Services argued that prior to Fidelity's unsuccessful motion to amend its reply to Port Orchard First's negligence counterclaim, Fidelity never argued that it was entitled to costs and attorney fees based on language in the escrow instructions. In addition, Port Orchard First and Support Services argued that all the relief requested in Fidelity's complaint had been granted: Port Orchard First and Support Services agreed to discharge Fidelity from its obligations in regard to the earnest money deposit, they were interpleaded and settled their dispute over the earnest money deposit, they agreed that Fidelity should be dismissed as a party to the interpleader action, they agreed to be enjoined from further legal action against Fidelity concerning the earnest money deposit, and the trial court already awarded Fidelity its reasonable costs and attorney fees for bringing the interpleader action.

Fidelity responded to the motion for judgment on the pleadings and moved for partial summary judgment on the issue of costs and attorney fees related to defending against Port Orchard First's negligence counterclaim. Fidelity argued that the

defendants' promise to indemnify Fidelity for fees and costs is clearly not predicated on a judicial determination or finding that Fidelity is the prevailing party in this lawsuit. Rather, the escrow instructions created an <u>indemnification</u> obligation designed to prevent a situation where the escrow agent would be required to bear the costs, expenses and attorney's fees incurred in connection with litigation over the transaction.

CP at 314-15.

On August 1, the trial court denied Fidelity's motion for partial summary judgment and granted Port Orchard First and Support Services' motion for judgment on the pleadings. On August 31, the trial court amended this order to reflect that in granting the motion for judgment on the pleadings, it considered argument of counsel, a number of pleadings, declarations, and transcripts from prior hearings that occurred in the case. Fidelity appeals this amended dismissal order.

## DISCUSSION

### STANDARD OF REVIEW

We review a CR 12(c) dismissal on the pleadings de novo. *Burton v. Lehman*, 153 Wn.2d 416, 422, 103 P.3d 1230 (2005). A dismissal under CR 12(c) is appropriate only if "it is beyond doubt that the plaintiff can prove no facts that would justify recovery, considering even hypothetical facts outside the record." *In re Wash. Builders Benefit Trust*, 173 Wn. App. 34, 80, 293 P.3d 1206, *review denied*, 177 Wn.2d 1018 (2013). "Like a CR 12(b)(6) motion, the purpose [of a CR 12(c) motion] is to determine if a plaintiff can prove any set of facts that would justify relief." *P.E. Systems, LLC v. CPI Corp.*, 176 Wn.2d 198, 203, 289 P.3d 638 (2012). As is the case with a CR 12(b)(6) motion, we "must take the facts alleged in the complaint, as well as hypothetical facts consistent therewith, in the light most favorable to the nonmoving party." *Davenport v. Wash. Educ. Ass'n*, 147 Wn. App. 704, 715, 197 P.3d 686 (2008). Additionally,

"we interpret contract provisions that do not require reference to extrinsic evidence de novo; they present questions of law." *Myers v. State*, 152 Wn. App. 823, 827, 218 P.3d 241 (2009), *review denied*, 168 Wn.2d 1027 (2010).

ESCROW INSTRUCTIONS

Fidelity argues that it is entitled to reimbursement of its costs and attorney fees accrued in defending Port Orchard First's negligence counterclaim pursuant to the express terms of the parties' escrow instructions. We disagree. Although Washington does allow "for parties to enter into indemnity agreements . . . whereby one party contractually agrees to indemnify, to be financially responsible for, the other party's negligence," such an agreement must be clearly spelled out. *Nw. Airlines*, 104 Wn.2d at 154. Here, the provision at issue appears only to require the parties to reimburse Fidelity for expenses related to interpleader actions and does not clearly purport to indemnify Fidelity for its own negligence or guarantee its reimbursement for having to defend actions unrelated to interpleader actions. Thus, the provision does not support Fidelity's argument that Port Orchard First and Support Services should be held liable for Fidelity's costs and fees accrued in defending the negligence action.

A.     INDEMNITY CLAUSES

"Indemnity clauses are subject to fundamental rules of contractual construction, and are to be construed reasonably so as to carry out, rather than defeat, their purpose. Any ambiguity is to be resolved against the drafter." *N. Pac. Ry. Co. v. Sunnyside Valley Irrigation Dist.*, 85 Wn.2d 920, 922, 540 P.2d 1387 (1975). "An often-repeated rule of construction for interpreting indemnity clauses is that they are to be viewed realistically, recognizing the intent of the parties to allocate as between them the cost or expense of the risk of losses or damages arising out of

10

performance of the contract." *Dirk v. Amerco Mktg. Co. of Spokane*, 88 Wn.2d 607, 613, 565 P.2d 90 (1977).

"[C]lauses purporting to exculpate an indemnitee from liability for losses flowing from his own acts or omissions are not favored as a matter of public policy and are to be clearly drawn and strictly construed." *Dirk*, 88 Wn.2d at 613. As our Supreme Court explained in *Northwest Airlines*,

> Washington initially found, and some state courts currently find, a clear and unequivocal intention to indemnify for indemnitee's own negligence by looking at the entire contract or at the all-encompassing language of the indemnification clause; the term negligence itself need not actually be used.
> Washington currently requires, as do some other states, that more specific language be used to evidence a clear and unequivocal intention to indemnify the indemnitee's own negligence.

104 Wn.2d at 155 (citations omitted).

B.    "DISPUTES AND INTERPLEADER" CLAUSE

Fidelity argues that Port Orchard First and Support Services should be held jointly and severally liable for costs and attorney fees it accrued in defending the negligence counterclaim based on the following provision in the parties' escrow instructions:

> **Disputes and Interpleader.** Should any dispute arise between the parties, and/or any other party, concerning the Property or funds involved in the Transaction, the Closing Agent may, in its sole discretion, hold all documents and funds in their existing status pending resolution of the dispute, or join in or commence a court action, deposit the money and documents held by it with the court, and require the parties to answer and litigate their several claims and rights among themselves. The parties jointly and severally agree to pay the Closing Agent's costs, expenses and reasonable attorney's fees incurred in any legal action arising out of or in connection with the Transaction or these instructions, whether such lawsuit is instituted by the Closing Agent, the parties, or any other person. Upon commencement of such interpleader action and the deposit of all funds and documents of the parties, the Closing Agent shall be fully released and discharged from all obligations to further perform any duties or obligations otherwise imposed by the terms of this escrow.

11

CP at 94.

Fidelity's argument hinges on the second sentence of this provision. It argues that this sentence "allows Fidelity to receive its fees and costs for being pulled into litigation for any reason related to the real estate transaction, <u>regardless of who brought the lawsuit, what the issues were, or who prevails</u>" because this "is a simple indemnity clause designed to insure that Fidelity does not incur excess or unanticipated costs as the escrow agent." Br. of Appellant at 27-28. This interpretation is unpersuasive for a number of reasons.

First, the provision's opening sentence provides that should "any dispute arise between the parties, and/or any other party, concerning the Property or funds involved in the Transaction, the Closing Agent may . . . commence a court action . . . and require the parties to answer and litigate their several claims and rights among themselves." CP at 94. This sentence differentiates between "the parties" (or "any other party") and "the Closing Agent" (Fidelity) and clearly contemplates Fidelity bringing an interpleader action when a dispute arises between the buyer and seller—as occurred here with Port Orchard First and Support Services—or when a dispute involving a third party occurs, perhaps a third party with colorable claim to title of the apartment complex. But this sentence does not address what should occur when a party has a dispute with "the Closing Agent," Fidelity.

Second, Fidelity's argument attempts to sever the second sentence from the rest of the provision at issue. But it is a basic rule of contract interpretation that the parties' intent "must be ascertained from reading the contract as a whole." *Felton v. Menan Starch Co.*, 66 Wn.2d 792, 797, 405 P.2d 585 (1965). Here, while the second sentence of the provision *is* broadly worded, the first and third sentences clearly limit the language in the second sentence to situations where Fidelity must be reimbursed for its costs and expenses related to interpleader actions. As

12

discussed above, the first sentence clearly refers to Fidelity's right to bring an interpleader action. And immediately following the "any legal action" language in the second sentence, the third sentence begins with "[u]pon commencement of *such* interpleader action." CP at 94 (emphasis added). The "such" in the third sentence necessarily relates back to the sentences immediately preceding it. Accordingly, the provision at issue provides that whenever Fidelity becomes involved in an interpleader action (whether they have instituted such action or not), the buyer and seller must reimburse it for its costs and attorney fees.[4] The title of this section of the contract, "Disputes and Interpleader," reinforces this interpretation.

Finally, as previously mentioned, Washington law requires "that more specific language be used to evidence a clear and unequivocal intention to indemnify the indemnitee's own negligence." *Nw. Airlines*, 104 Wn.2d at 155. For instance, in *Northwest Airlines*, the indemnification clause at issue stated that Northwest would be indemnified from all injuries "whether or not caused by [its own] negligence." 104 Wn.2d at 156. Thus, our Supreme Court held that "[e]ven under [Washington's] more stringent requirement" for indemnifying an indemnitee's own negligence, "the involved indemnification clause clearly includes coverage for the indemnitee's negligence." *Nw. Airlines*, 104 Wn.2d at 156. Here, even if the language in the second sentence is read broadly (i.e., read without the limiting language of the first and third sentences), it does not unequivocally indemnify Fidelity from its own negligence. Accordingly, Fidelity's argument fails for this reason as well.

---

[4] We note that in the case of construing ambiguous provisions in a contract, it has long been the rule in Washington that where "language of a contract is susceptible of two constructions [courts] will adopt that interpretation which is unfavorable to the one who so drafts or supplies" the contract. *Clise Inv. Co. v. Stone*, 168 Wash. 617, 620-21, 13 P.2d 9 (1932). Here, Fidelity supplied the escrow instructions at issue and we must construe any ambiguities against Fidelity.

C.    FEES INCURRED IN BRINGING INTERPLEADER ACTION

The provision at issue allows Fidelity to recover costs and attorney fees incurred in bringing the interpleader action. It does not cover a situation, like this one, where a party brings a negligence action against Fidelity. And, generally, "absent a contract, statute, or recognized ground of equity," costs and attorney fees are not recoverable. *Rorvig v. Douglas*, 123 Wn.2d 854, 861, 873 P.2d 492 (1994). However, this does not end the inquiry. Arguably, costs accrued in defending a counterclaim filed in response to an interpleader action could be recoverable if the counterclaim is intertwined with the interpleader action. In *C-C Bottlers, Ltd. v. J.M. Leasing, Inc.*, 78 Wn. App. 384, 896 P.2d 1309 (1995), Division Three of this court addressed a similar situation and rejected this argument.

In that case, C-C Bottlers sued J.M. Leasing to collect on two promissory notes. Both notes included a "garden variety attorney fees clause which provided for recovery of the costs and expenses of collection, including suit." *C-C Bottlers*, 78 Wn. App. at 386. In response to the action, J.M. Leasing counterclaimed against C-C Bottlers, arguing that C-C Bottlers had committed securities fraud. *C-C Bottlers*, 78 Wn. App. at 386. The trial court granted C-C Bottlers' motion for summary judgment "on the notes but delayed entry of the judgment until [J.M. Leasing's] counterclaims could be tried." *C-C Bottlers*, 78 Wn. App. at 386. After a bench trial, the court dismissed the counterclaims and awarded "attorney fees and costs for the entire litigation based on the attorney fees provision in the notes," believing that the counterclaims were "substantially interwoven and inseparable" from C-C Bottlers' action to obtain a judgment on the promissory notes. *C-C Bottlers*, 78 Wn. App. at 386-87.

On appeal, Division Three disagreed. After determining that J.M. Leasing's counterclaims were permissive (rather than compulsory), it held that "'[t]he prevailing party

should be awarded attorney fees only for the legal work completed on the portion of the claim permitting such an award', because while collateral claims may well be related to the contract claim and therefore conveniently tried together, they need not be resolved in order to decide the primary claim." *C-C Bottlers*, 78 Wn. App. at 389 (quoting *King County v. Squire Inv. Co.*, 59 Wn. App. 888, 897, 801 P.2d 1022 (1990), *review denied*, 116 Wn.2d 1021 (1991)).

Here, Fidelity's negligence counterclaim was permissive as it could have been brought as a separate action. *See* CR 13(b). "Permissive counterclaims 'do not affect, nor are they affected by, the outcome' of the original claim." *Atlas Supply, Inc. v. Realm, Inc.*, 170 Wn. App. 234, 238, 287 P.3d 606 (2012) (quoting *C-C Bottlers*, 78 Wn. App. at 387). After Support Services and Port Orchard First dismissed all claims against each other, the escrow money was released, and Fidelity was reimbursed its costs for having to bring the interpleader action, Port Orchard First's negligence counterclaim could still have been litigated had it not requested that the claim be voluntarily dismissed. Accordingly, as in *C-C Bottlers*, absent a contract provision or ground in equity[5] dictating a different result, Fidelity was only entitled to "attorney fees . . . for the legal work completed on the portion of the [interpleader action] permitting such an award." *King*

---

[5] Fidelity repeatedly stresses in its briefing the frivolous or meritless nature of Port Orchard First's negligence counterclaim. Fidelity, however, never moved the trial court to enter "written findings . . . that the action, counterclaim, cross-claim, third party claim, or defense was frivolous and advanced without reasonable cause" pursuant to RCW 4.84.185. Case law explicitly holds that a party can move, under RCW 4.84.185, to receive an attorney fee award in the event that a frivolous lawsuit is voluntarily dismissed. *See, e.g., Biggs v. Vail*, 119 Wn.2d 129, 136, 830 P.2d 350 (1992); *Eller v. E. Sprague Motors & R.V.'s, Inc.*, 159 Wn. App. 180, 193-94, 244 P.3d 447 (2010). But because Fidelity never moved the court to enter findings on whether Port Orchard First's counterclaim was frivolous, we cannot decide that issue: under RCW 4.84.185, this court reviews a trial court's denial of a request for reasonable attorney fees for an abuse of discretion. *Protect the Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 218, 304 P.3d 914, *review denied*, No. 89113-3 (Wash. Nov. 6) (2013). Because Fidelity never asked the trial court to rule on this issue, the trial court never had the opportunity to exercise that discretion.

No. 43873-9-II

*County*, 59 Wn. App. at 897. And here, the trial court already awarded Fidelity $1,652.96, its costs and fees accrued in bringing the interpleader action.

ATTORNEY FEES

Fidelity argues that it is entitled to attorney fees on appeal. However, because Fidelity has not prevailed in this appeal, we deny this request. *City of Longview v. Wallin*, 174 Wn. App. 763, 792, 301 P.3d 45, *review denied*, No. 89065-0 (Wash. Nov. 6) (2013).

We affirm the trial court's summary dismissal of this case. Even assuming that Fidelity properly pleaded a contractual indemnity claim, the escrow instructions do not support Fidelity's argument that it should be reimbursed for defending itself from a negligence counterclaim based on the agreement of the parties.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, P.J.

We concur:

PENOYAR, J.

MAXA, J.

16